CHARLES HUTCHISON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8053.    Promulgated October 23, 1928.

*O. M. Peabody, Esq.*, for the petitioner.
*Clark T. Brown, Esq.*, for the respondent.

## OPINION.

MILLIKEN: Under the ninth clause of the contract between petitioner and Pathe Exchange, Inc., petitioner agreed to furnish at his own expense all modern wardrobe required to properly portray or enact his parts in the pictures contracted for. On account of the peculiar and hazardous nature of his performances, commonly called "stunt" acting, his clothing was frequently destroyed or rendered unfit for subsequent use.

During the taxable year petitioner in the course of his work destroyed or lost clothing which cost $1,036.40 and upon which he had expended the additional sum of $243.58 for tips and cleaning and pressing, making $1,279.98, which he claims as a deduction.

These clothes were strictly theatrical equipment and were used for no other purposes. They were just as much an ordinary and

necessary business necessity as tools for a mechanic, machinery for a manufacturer, or rent or heat and light expenditures to a merchant. They were necessary for the performance of the petitioner's business, viz., " stunt " acting, and the cost thereof was a business and not a personal expense. The full amount of $1,279.98 should be allowed as a deduction. The claim of $1,003.25 for training to keep in physical condition includes payments by petitioner for massage treatments, physical trainer, rent for hand-ball court and gymnasium facilities, and other minor items. It is plain from the character of the " stunts " performed by petitioner, and from the evidence herein, that it would have been impossible for him to have performed them unless he was in excellent physical condition. Not only is this so, but it is evident that in order to be able to continue such acting he had to be continually in training, so as to be in condition to enact his part, or carry on his business. We think that under these circumstances these training expenses were an ordinary and necessary business expense and should be allowed as a deduction.

The next two claims for deductions are $2,585 for traveling expenses and $3,313.84 for cost and upkeep of automobile. These will be considered together, as they were for the same purposes and are somewhat intermingled. Petitioner claims that in the course of his employment it was necessary for him to travel to various parts of the country in search of " locations " for the performance of his " stunt " acts; that he did make various trips for that purpose and expended the sums claimed.

In the eighth paragraph of the contract between petitioner and Pathe Exchange, Inc., the latter agreed to pay the traveling and hotel expenses incurred by petitioner in the service of Pathe when petitioner was required to go more than 25 miles from the studio designated by Pathe.

Petitioner testified that he was not reimbursed by Pathe for traveling expenses incurred and paid by him in 1921, in the amount of $2,585, and same should be allowed as a deduction. Concerning the claim for cost and upkeep of an automobile, these expenses were incurred in the interest of Pathe and in his own interest for the writing of his own stories. The expenses of the various trips were not itemized, but are simply shown as a total sum for each trip, in round numbers. There is no separation of the amounts properly chargeable to Pathe and those which petitioner would be required to pay, and under such state of facts we can not speculate concerning the part, if any, as to which petitioner would be entitled as an ordinary and necessary business expense.

The deduction of $3,275 claimed for bad debts consisted of personal loans of $3,000 to William Hutchison, a cousin, $250 to George

Gray, and $25 to Eddie Phillips. Relative to these loans, petitioner was frank in stating that he made no investigation on his own account to determine the worthlessness of the debts in question. He merely took his cousin's word and concluded that his debt and the others were worthless. We do not think this is sufficient. There must be some effort to ascertain the facts, and those ascertained should be submitted to the Board for consideration.

In the recent case of *George P. Rowell*, 12 B. T. A. 1197, in passing upon the allowance of bad debts, we again quoted with approval what was stated in *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566, as follows:

The burden then is upon the petitioner to establish that it did make certain during the taxable year that the debts claimed as deductions were without value. We take it for granted that when Congress authorizes this Board to decide the issues arising between a taxpayer and the Commissioner in such a case as this, such taxpayer has not established the correctness of his contention by his bald statement that he believes it to be worthless, or that he ascertained it to be worthless or that, on undisclosed information he came to the conclusion that it was worthless. To so hold would be to put the Government in the hands of the taxpayer and substitute his judgment as to the conclusion to be drawn from the facts for that of the body created to decide the issue.

Nor is it a question whether the taxpayer believed the debt to be worthless. To so hold would be to grant an undue advantage to the pessimist or to the taxpayer who makes no investigation. In our opinion the burden upon the petitioner is to show what steps he took to collect the debt, what information came to his knowledge and what other circumstances existed which led him to his conclusion. It then becomes the duty of the Board to determine whether the debt was in fact ascertained to be worthless within the meaning of the law. *Appeal of Alemite Die Casting & Manufacturing Co.*, 1 B. T. A. 548.

We also stated in the *Rowell* case, *supra:*

In the instant proceeding the petitioner testified as to eleven of the items claimed as worthless debts, but no evidence was submitted to show when the debts were ascertained to be worthless, nor were the facts upon which such ascertainment was based presented in each case. Most of the debts were outstanding as of March 1, 1913, and it is not shown that they were more uncollectible in 1919 than in prior years.

Compare *T. B. Floyd*, 11 B. T. A. 903.

Tested by these rules, petitioner has not shown that he ascertained the debts to be worthless during the taxable year and deduction therefor can not be allowed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*