## Reginald Denny, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 49516.    Promulgated December 17, 1935.

*Phillip D. Johnston, Esq.*, for the petitioner.
*Clay C. Holmes, Esq.*, for the respondent.

742

OPINION.

ARUNDELL: ■ The first question is whether the sum of $11,000 received by petitioner from Universal Pictures Corporation was income, and, if so, in what year. The petitioner claims that it was a gift, but that if it was income, it was income in 1925 rather than 1926.

The claim that the sum was a gift needs but a short statement: It is elementary that if there is consideration for a transaction, it is not a gift. *Noel* v. *Parrott*, 15 Fed. (2d) 669. Here there was a consideration. The transaction was in connection with the contract of employment and the money was to become the property of the petitioner only in the event that he continued in the employ of the lender upon exercise of the option to retain petitioner's services after a designated date. The option was exercised and petitioner continued in the service of the company. This was ample consideration to remove the transaction from the category of gifts.

We are of the opinion that the item was properly reported by the petitioner and taxed by the respondent as income in 1926. Although the money was received by the petitioner in 1925, it was then a loan. It was neither paid nor received as income in that year. Not until the happening of an event in 1926 did the money become the petitioner's. It then ripened into a bonus, as it was described in petitioner's return. The situation here is distinguishable from those where money is received subject to the possibility of repayment upon the happening of a subsequent event. See *North American Oil Co.* v. *Burnet*, 286 U. S. 417. Here the money was received not "under any claim of right and without restriction as to its disposition", as in the *North American Oil Co.* case, but subject from the first to the definite obligation to repay. That obligation remained in effect until in 1926. The case here is much like that where one receives as compensation property encumbered by a mortgage to the full value of the property. In that situation there would be no income

in the year of the receipt. Upon cancellation of the mortgage by the transferor in a subsequent year there would be income to the recipient, and the result would be the same whether the cancellation be regarded as the forgiving of indebtedness or as property then freed for the first time from restriction on use. This question is decided for the respondent.

■ The petitioner has established that in 1925 he expended $400 for dental bridge work to take the place of teeth lost in making a prize fight picture, and that the making of that picture was in line with his duties under his contract of employment. We hold that the amount so expended is deductible as an ordinary and necessary expense incurred in the petitioner's business. The situation here is analogous to that in *Charles Hutchison*, 13 B. T. A. 1187, where we allowed a "stunt actor" to deduct the cost of clothing destroyed in performing the feats required of him in the making of pictures. It is distinguishable from the case of *Louis M. Bourne*, 23 B. T. A. 1288, where we disallowed a deduction claimed by a lawyer for hospital and medical charges occasioned by an attack of arthritis. While the deduction there was sought as a loss item, rather than as a business expense as here, the important distinction is that in the *Bourne* case there was no showing of any connection between the expenditure and the taxpayer's occupation. In this case the connection is direct. The expense was directly attributable to the petitioner's performance of services under his contract of employment. We hold that he is entitled to deduct the $400 expended as a business expense.

■ The airplane that petitioner purchased in 1924 for his personal use was converted to commercial use in February 1925, and was used in a purely commercial venture during the last ten months of 1925. The expenses of operation and depreciation after February 1925, and the loss on disposition are allowable under the decision in *Heiner* v. *Tindle*, 276 U. S. 582. We have set out in the findings of fact the amount of the established expenses. As to the basis for depreciation, it appears that the petitioner had completed remodeling of the plane just shortly before devoting it to commercial use. Original cost, plus remodeling cost, was $5,000. That sum, we believe from the evidence, was the value when it was placed in commercial service and is the proper basis for depreciation. The rate used by petitioner, 40 percent, does not appear to be warranted by the evidence. From the petitioner's testimony, we gather that he regarded shrinkage of market value as synonomous with loss of useful value. The two are rarely, if ever, the same. We are of the opinion that a 20 percent rate will give the reasonable allowance for depreciation allowed by the statute. No depreciation deduction is sought for 1926. This is immaterial to a correct

determination of income for that year, inasmuch as the petitioner disposed of the plane within the year. What he would gain by depreciation he would lose in the reduction of basis. He turned the plane over to Nomis in 1926 in satisfaction of bills of around $500, which amount should be treated as sale price and loss computed accordingly.

■ Deductions are claimed for club dues and cost of operating a motor boat. These are claimed to be " publicity expenses " and allowable as ordinary and necessary business expenses. The evidence is insufficient to support any finding that these expenditures were made with a view to directly benefiting the petitioner in his occupation. He testified that he is not a clubman and that he rarely made any use of the clubs to which he belonged. It is difficult to see how the mere payment of dues can be regarded as an ordinary and necessary expense. According to petitioner's testimony, not more than 25 percent of the usage of his motor boat was for publicity purposes. This, of course, must be regarded an as outside figure, and requires the support of evidence to establish the business character of that portion of the cost of maintaining and operating the boat. The petitioner's efforts to obtain publicity seem to have been directed toward the matter of building up good will rather than the development or increase of a business enterprise. In the years before us he was under contract whereby he was to receive stated weekly salaries for a period of five years, and he has failed to show wherein his business of carrying out his contract would be affected by his so-called publicity expenses. The respondent is sustained in the disallowance of these items.

■ The petitioner's household expenses amounted to $20,465.27. He claims 40 percent of that amount as an advertising expense, that percentage he says being attributable to the cost of entertaining in his home for publicity purposes. What we have said above on the subject of petitioner's motor boat is in point here. In addition to the failure to show a direct connection between expenditures and the petitioner's business, and the difficulty of showing the cost of entertaining separately from maintenance for personal and family use, there is the difficulty of segregating purely social entertainments from those staged with a business objective. Entertainments in the home may be prompted by either social or commercial motives or they may partake of both characteristics, with either element predominating. There is a wide gap between entertaining for purely business purposes at public places, where even though exact costs are not known they may be estimated with some degree of accuracy, cf. *Blackmer* v. *Commissioner*, 70 Fed. (2d) 225, and entertaining in the home, where not only the family is maintained but where, if

the general standard of social conduct obtains, there are at least some personal or social guests. Having due regard for the norm of conduct of the average home, we should have very clear evidence on the point before we say that any particular percentage of its activities are purely commercial. We do not have that evidence here.

The facts in this case distinguish it from the case of *Ned Wayburn*, 32 B. T. A. 813. In that case the taxpayer, the president of a corporation, used corporate funds for entertaining, partly in his home, parents and others who might send children to the dancing studio conducted by the corporation. The evidence in that case showed the numbers of people entertained at different functions, the occupations or professions of some of the guests, and that business was brought to the corporation as the result of the entertainments. On the evidence in that case we held that so much of the corporate funds as the taxpayer expended for entertainment to further the corporate business was not income to him. As above pointed out, we have no evidence here of any connection between petitioner's outlay and the furtherance of his business. The respondent's disallowance of deductions is presumptively correct, *Old Mission Portland Cement Co.* v. *Helvering*, 293 U. S. 289, and the evidence here fails to rebut that presumption.

■ The petitioner was compelled to keep himself in first-class physical condition, and to train as though for a prize fight. For such training he expended $254 in the year 1925. This expenditure should be allowed as a deduction. *Charles Hutchison, supra.*

■ Petitioner is not entitled to the deduction of $675 from his gross income for 1925. This amount represents the cost of an automobile presented by the petitioner to one Torrillo, who was in the employ of Universal and who, it appears, never was in the employ of the petitioner. It appears that he ran errands for the petitioner and did other small services. Not only did petitioner give him the automobile, but he also made him presents of sums of money, the amount of which is not given. Gifts of such large amounts to persons not in one's employ can not be considered either an ordinary or necessary expense, at least without a showing that the services were in some way commensurate with the outlay. *Welch* v. *Helvering*, 290 U. S. 111.

■ Petitioner was required to furnish all of his costumes and make-up except what were termed period and character costumes. Wigs and other make-up for which the petitioner claims a deduction of $2,288.59 were not included in the exception. Petitioner is entitled to the deduction. *Charles Hutchison, supra.*

*Decision will be entered under Rule 50.*