## HILL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6060.

United States Court of Appeals
Fourth Circuit.

Argued April 13, 1950.

Decided May 19, 1950.

F. Weaver Myers, Washington, D. C. (F. C. Niswander and Hamel, Park & Saunders, Washington, D. C., on the brief), for petitioner.

George D. Webster, Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, Robert N. Anderson and Francis W. Sams, Special Assistants to the Attorney General, on the brief), for respondent.

Before SOPER and DOBIE, Circuit Judges, and HAYES, District Judge.

DOBIE, Circuit Judge.

This is an appeal by Nora Payne Hill (hereinafter called taxpayer) from a decision of the Tax Court of the United States entered on September 7, 1949, affirming a determination of the Commissioner of Internal Revenue that there is a deficiency in the income tax due by taxpayer in the amount of $57.52 for the calendar year 1945.

During the taxable year and for twenty-seven years prior thereto, taxpayer was engaged in the business of teaching school in the State of Virginia. During the taxable year in question, she attended summer school at Columbia University in New York City, for which she incurred expenses in an

amount of $239.50, which she deducted in computing her net income on her federal income tax return for the year 1945. These expenses were disallowed upon the grounds that they were personal expenses and were not deductible for federal income tax purposes. The only question for decision by us is: Was the taxpayer correct in deducting these expenses as ordinary and necessary expenses incurred in carrying on her trade or business? We think this question must be answered in the affirmative. The reasonableness of the amount of these expenses is not disputed.

The pertinent provisions of the Internal Revenue Code applicable to the issues involved are as follows:

Section 23(a) (1) (A)

"In computing net income there shall be allowed as deductions:

"(a) Expenses

"(1) Trade or business expenses

"(A) In General. All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity."

Section 23(a) (2)

"In computing net income there shall be allowed as deductions:

"(a) Expenses

"(2) Non-trade or non-business expenses. In the case of an individual, all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

"Section 24. Items not deductible

"(a) General rule. In computing net income no deduction shall in any case be allowed in respect of—

"(1) Personal, living, or family expenses, except extraordinary medical expenses deductible under section 23(x)." 26 U.S.C.A. §§ 23(a) (1) (A), (2), 24(a) (1).

The pertinent provisions of the Virginia Code Annotated, 1942, applicable to the issues before us, are as follows:

"Title 11, Chapter 33, Section 660

" * * * No teacher shall be employed or paid from the public funds unless such teacher holds a certificate in full force in accordance with the rules of certification laid down by the State Board of Education, provided, that, where a teacher holding a certificate in force is not available, a former teacher holding an expired certificate may be employed temporarily as a substitute teacher to meet an emergency. * * *"

"Title 11, Chapter 35, Section 786(b) (3)

" * * * provided, that no school board shall employ or pay any teacher from the public funds unless the teacher shall hold a certificate in full force, according to the provisions of section six hundred and sixty of the laws relating to the public free schools in counties; * * *."

The Regulations Governing the Certification of Teachers and the Qualifications of Administrators and Supervisors in Virginia required for the renewal of a teacher's certificate that taxpayer present evidence that she had been a successful teacher, had read at least five books on the Teachers' Reading Course during the life of her certificate and also must either (a) present evidence of college credits in professional or academic subjects earned during the life of the certificate or (b) pass an examination on five books selected by the State Department of Education from the Teachers' Reading Course for the year in which her license expired.

In 1945, taxpayer was head of the Department of English and a teacher of English and Journalism at the George Washing-

ton High School in Danville, Virginia. A Master of Arts of Columbia University, she held the Collegiate Professional Certificate, the highest certificate issued to public school teachers by the Virginia State Board of Education. She was notified of the expiration of her certificate and that the certificate could not be renewed unless she complied with the Regulations set out above.

The alternatives required for the renewal of taxpayer's certificate were: (a) acquiring college credits or (b) passing an examination on five selected books. She elected (a) and attended the Summer School of Columbia University. We hardly think it open to question that she chose the alternative which would most effectively add to her efficiency as a teacher. At Columbia she took two courses: one on the technique of short story writing, which was right in her alley; another in abnormal psychology, which would be most useful to a teacher whose pupils were adolescents.

It is clear that to be deductible as as business expense the item must be— (a) "paid or incurred" within the taxable year; (b) incurred in carrying on a "trade or business"; and (c) both "ordinary and necessary." As a corollary, the expenses must not be personal in their nature. We think taxpayer has completely satisfied all these requisites, so that the decision of the Tax Court must be reversed.

In its opinion, the Tax Court stated:

"We cannot assume that public school teachers *ordinarily* attend summer school to renew their certificates when alternative methods are available. The record does not show that the course pursued by petitioner was the usual method followed by teachers in obtaining renewals of their certificates or that it was necessary so to do. * * *

"The record is devoid of any showing that petitioner was employed to continue in her position as teacher at the time she attended summer school in 1945 and made the expenditures in connection therewith for which she seeks a deduction. The inference may well be that she took the summer course to obtain a renewal of her

certificate that would qualify her for re-employment. The expense incurred was more in the nature of a preparation to qualify her for teaching in the High School in Danville, Virginia."

Also, in support of its decision, the Tax Court quoted O.D. 892, 4 C.B. 209 (1921): "The expenses incurred by school-teachers in attending summer school are in the nature of personal expenses incurred in advancing their education and are not deductible in computing net income."

As to the first of these statements, we think it is quite unreasonable to require a statistical showing by taxpayer of the comparative number of Virginia teachers who elect, for a renewal of their certificates, the acquisition of college credits rather than the much less desirable alternative of standing an examination on the five selected books. The existence of two methods for the renewal of these certificates, one or the other of which is compulsory, is not in itself vital in this connection. If the particular course adopted by the taxpayer is a response that a reasonable person would normally and naturally make under the specific circumstances, that would suffice. Even if a statistical study actually revealed that a majority of Virginia teachers adopted the *examination on the selected books, in order* to renew their certificates, rather than the method of acquiring college credits, our conclusion here would be the same. Manifestly, the added expense of attending a summer school, in the light of the slender salaries paid to teachers, would deter many teachers from such a course, however strong might be their predilections in favor of such a procedure. We note that the statistical requirement does not seem to have been enforced in the cases subsequently cited in this opinion—cases, we think, far less meritorious than the one before us.

Nor do we approve the reasoning of the Tax Court that the taxpayer's failure to show by positive evidence that she was employed to continue in her position as teacher when she incurred the summer school expenses should negative the deduction of these expenses. She did prove

to the Tax Court that she had been continuously so engaged for consecutive decades. She had not resigned her position and no practical advantage would accrue to her upon a renewal of her certificate other than the privilege and power to continue as a teacher. Clearly, the very logic of the situation here shows that she went to Columbia to maintain her present position, not to attain a new position; to preserve, not to expand or increase; to carry on, not to commence. Any other view seems to us unreal and hypercritical. And taxpayer, in her petition to the Tax Court for a review of its decision, showed conclusively that when she went to Columbia University in the summer of 1945, she was then under contract with the Danville School Board to teach for the ensuing session of 1945-1946 and that to carry out this existing contract, she was obligated to renew her certificate by complying with the pertinent regulations.

It is not necessary for us to brand as void O.D. 892, 4 C.B. 209 (1921), declaring that the expenses incurred by teachers in attending summer schools are not deductible. We think this does not, and should not, control when, as in the instant case, the attendance at summer school was undertaken essentially to enable a teacher to continue her (or his) career in her (or his) existing position. I.T. 3448, C.B. 1941-1, page 206, states: "The dues paid by teachers to professional societies, the price of their subscriptions for educational journals connected with their profession, and the expenses of traveling and meals and lodging incurred in attending teachers' conventions in this country, if they are not reimbursed for such expenses, are considered ordinary and necessary business expenses and are deductible from their compensations as teachers in determining net income for Federal income tax purposes." Taxpayer here, which is true of teachers generally, could probably pursue her teaching career without being a member of a professional society, without subscribing to educational journals, and without attending conventions of teachers. Yet this taxpayer went to Columbia prompted by the necessity of renewing her certificate as a prerequisite to continuing her work as a teacher in the Danville School. And, in I.T. 3634, C.B. 1944, page 90, the Commissioner has specifically ruled: "* * * the initiation fee required to be paid by A to a labor union in order to obtain employment represents an ordinary and necessary business expense, and the amount of the fee may be deducted from gross income for the taxable year in which paid." (Italics ours.) How much stronger in favor of deductibility and more persuasive are the facts in the case of the instant taxpayer!

The Commissioner even seeks to hold against the taxpayer here her frank admissions that she enjoyed her courses at Columbia, that she welcomed this opportunity to increase her teaching efficiency, and that the renewal of her certificate (already the highest that could be granted) meant no further promotion, no added pay. Would the Commissioner have been more ready to grant the deduction to a venal teacher, who attended a summer school for the less laudatory purposes of a higher position in the educational hierarchy, or for an increase in salary? We hardly think so.

Dictionary definitions of the words "ordinary," "necessary," and "personal" afford scant assistance in the solution of our problem. Quite helpful, though, are the opinions in the decided cases. Frequently quoted is the observation of Mr. Justice Cardozo, in Welch v. Helvering, 290 U.S. 111, 113, 54 S.Ct. 8, 9, 78 L.Ed. 212: "Now, what is ordinary, though there must always be a strain of constancy within it, is none the less a variable affected by time and place and circumstance. Ordinary in this context does not mean that the payments must be habitual or normal in the sense that the same taxpayer will have to make them often. A lawsuit affecting the safety of a business may happen once in a lifetime. The counsel fees may be so heavy that repetition is unlikely. None the less, the expense is an ordinary one because we know from experience that payments for such a purpose, whether the amount is large or small, are the common and ac-

cepted means of defense against attack. Cf. Kornhauser v. United States, 276 U.S. 145, 48 S.Ct. 219, 72 L.Ed. 505. The situation is unique in the life of the individual affected, but not in the life of the group, the community, of which he is a part. At such times there are norms of conduct that help to stabilize our judgment, and make it certain and objective. The instance is not erratic, but is brought within a known type."

Said Mr. Justice Douglas, in Deputy v. Du Pont, 308 U.S. 488, 496, 60 S.Ct. 363, 367, 84 L.Ed. 416: "One of the extremely relevant circumstances is the nature and scope of the particular business out of which the expense in question accrued. The fact that an obligation to pay has arisen is not sufficient. It is the kind of transaction out of which the obligation arose and its *normalcy in the particular business* which are crucial and controlling." (Italics ours.)

And Mr. Justice Black, in Commissioner v. Heininger, 320 U.S. 467, 471, 472, 64 S.Ct. 249, 252, 88 L.Ed. 171, observed: "It is plain that respondent's legal expenses were both 'ordinary and necessary' if these words be given their commonly accepted meaning. For respondent to employ a lawyer to defend his business from threatened destruction was 'normal'; it was the response ordinarily to be expected. * * * It's (the Government's) argument is that dentists in the mail order business do not ordinarily and necessarily attempt to sell false teeth by fraudulent representations as to their quality; that respondent was found by the Postmaster General to have attempted to sell his products in this manner; and that therefore the litigation expenses, which he would not have incurred but for this attempt, cannot themselves be deemed ordinary and necessary. We think that this reasoning, though plausible, is unsound in that it fails to take into account *the circumstances under which respondent incurred the litigation expenses.*" (Italics ours.)

In Hutchison v. Commissioner, 1928, 13 B.T.A. 1187, and in Denny v. Commissioner, 1935, 33 B.T.A. 738, moving picture actors were allowed as deductions expenses incurred in keeping themselves in first class physical condition. In the Hutchison case, these expenses included "massage treatments, physical trainer, rent for handball court and gymnasium facilities; and other minor items." Again, in Hempel v. Commissioner, 1947 P-H T. C. Memo. Service, Para. 47,163, and in Thomas v. Commissioner, 1939 P-H B. T. A. Memo. Service. Para. 39,112, opera singers were permitted to deduct money paid to a voice coach. In none of these cases were the expenses so vital and so necessary for the continuation of the profession involved as were the expenses at issue in the instant case. Also, the expenses involved in these cases were more personal in nature than were the expenses with which we are concerned. Those taxpayers, too, were not required to prove by statistics how many moving picture actors incur similar expenses to keep in physical condition or how many singers must resort to voice coaches.

We are not impressed by the attempt of the Commissioner to dispose of these cases in his brief, wherein it is stated: "Taxpayer cites and relies on Denney v. Commissioner, 33 B.T.A. 738; Hutchison v. Commissioner, 13 B.T.A. 1187; Hempel v. Commissioner, decided June 23, 1947 (1947 P-H T. C. Memorandum Decisions, par. 47,183); and Thomas v. Commissioner, decided March 14, 1939 (1939 P-H B. T. A. Memorandum Decisions, par. 39,112), as authority for her position that the expenses here involved were not personal and are deductible. None of these cases involved educational expenses, however, and so have no application to the issue presented here. All of these cases involved specialized training of little or no value outside of the orbit of the respective taxpayer's business. Moreover, in the Hempel and Thomas cases the particular question raised was whether the amount in question had been proved, not whether the expense had been shown to be ordinary and necessary."

We quote a trenchant critique on the decision of the Tax Court from Maguire, Individual Federal Income Tax in 1950, 35

American Association of University Professors Bulletin, 748, 762: "As to the matters just discussed, Nora P. Hill, 13 T.C. [291] No. 41 (1949), is an interesting decision, if scarcely an encouragement. The taxpayer, a Virginia public school teacher, sought to deduct as an ordinary and necessary business expense for 1945 the cost of attending summer courses in Columbia University. Her teaching certificate, the highest granted by the State Board of Education, came up for renewal in 1945. Virginia law required for renewal of teaching certificates either the taking of professional or academic courses for credit or the passing of examinations on prescribed reading. The Tax Court denied the claim of deduction. Part of its reasoning was that because the Virginia legal requirements might be satisfied by pursuing either of the two alternatives, the showing was insufficient that what the taxpayer had done was the ordinary method of satisfaction. Another part of the reasoning was that the taxpayer had not explicitly shown she was employed to continue as a teacher at the time she took the summer school courses. Hence, said the Court, it might be inferred that the taxpayer was seeking to qualify for reemployment as distinguished from merely maintaining an employed status. While these views seem hypercritical and are an invitation to the same teacher or another teacher to try again with more carefully detailed proof, the tone of the opinion hints at strong distaste for this sort of deduction."

Our conclusion is that the expenses incurred by the taxpayer here were incurred in carrying on a trade or business, were ordinary and necessary, and were not personal in nature. She has, we think, showed that she has complied with both the letter and the spirit of the law which permits such expenses to be deducted for federal income tax purposes. We do not hold (and it is not necessary for us to hold) that all expenses incurred by teachers in attending summer schools are deductible. Our decision is limited to the facts of the case before us. The decision of the Tax Court of the United States is, accordingly, reversed and the case is remanded to that Court with instructions to allow taxpayer as a deduction the expenses which she claims.

Reversed.