Evelyn and John Paul Devereaux v. Commissioner.
Devereaux v. Commissioner
Docket No. 72892.
United States Tax Court
T.C. Memo 1960-87; 1960 Tax Ct. Memo LEXIS 201; 19 T.C.M. (CCH) 453; T.C.M. (RIA) 60087; May 6, 1960
*201 The principal petitioner was an assistant professor on the faculty at Pennsylvania State University. He had first been employed for such position in 1950, on a probationary basis; but, under the University's subsequently adopted academic tenure regulations, he had to be given written notice prior to July 1, 1954, if his contract was not to be renewed - otherwise his tenure would become permanent one year later. No such notice was issued; and as of July 1, 1955, petitioner was accorded permanent tenure by affirmative action of the University. A few weeks prior to the deadline for issuance of any such notice, he commenced studies at the University of Pittsburgh, toward a Ph. D. degree, while still continuing his employment at Penn State; and he thereafter pursued such studies periodically during the taxable years 1955 and 1956, and subsequent thereto. Such doctoral studies were not required under his contract with Penn State, or under its regulations; and they were not shown to be necessary, either for the retention of his existing position or for the improvement of his skills therein. Rather, they were incurred for the primary purposes of qualifying him for a new and better position, *202 and for the salary increase attaching to such improved position. Held, that in such circumstances, said expenditures are not deductible under section 162(a) of the 1954 Code, or under section 1.162-5 of the Income Tax Regulations.
John Paul Devereaux, pro se, 1319 Harris Street, State College, Pa. Donald W. Howser, Esq., for the respondent. PIERCE Memorandum Opinion PIERCE, Judge: The respondent determined deficiencies in the income taxes of the petitioners, in the amounts of $275.44 for the year 1955 and of $115.51 for the year 1956. [1]
The sole issue for decision is whether *204 amounts expended by the principal petitioner in connection with studies leading toward an academic degree of Doctor of Philosophy, are deductible as ordinary and necessary business expenses under section 162(a) of the 1954 Code. All the facts have been stipulated, and are so found. Such facts may be summarized as follows. Petitioners, John Paul and Evelyn Devereaux, are husband and wife. They filed a joint income tax return for each of the years involved, with the district director of internal revenue at Scranton, Pennsylvania. The wife, Evelyn, is a party herein solely by reason of having joined with her husband in filing said joint returns. The husband John Paul (herein called the "petitioner") was, during each of the years involved, an assistant professor of accounting in the School of Business Administration of Pennsylvania State University. He was first appointed to the faculty of said University in September 1950 as an assistant professor in the School of Liberal Arts; and then in 1953, he was transferred to the University's newly established School of Business Administration, where he has since engaged in teaching accounting and business administration. Prior to becoming *205 associated with said University, he had in 1941 received a master's degree at Columbia University; and during the years 1947 to 1950, he had been employed as an instructor of accounting and business administration, first at the University of Connecticut and then at the University of Maryland. Petitioner's initial appointment to the Pennsylvania State faculty was on a temporary basis; but he continued to be reappointed from year to year to the same position. As of July 1, 1952, the University adopted a new plan of academic tenure for its faculty; and the regulations pertaining thereto provided, in substance and so far as here material: (1) That unless otherwise stated in writing, all full-time appointments to the rank of instructor or to a higher academic rank should be probationary until notification of change of status; (2) that such probationary period should not extend for more than 7 years; (3) that after a faculty member had served 2 or more years with the University in a probationary status, he had to be given at least 12 months' prior written notice of any intention of the University not to renew his contract; and (4) that after a faculty member had been accorded permanent *206 status, he thereafter could not be removed except for cause, and then only after prescribed hearing procedures. The regulations further provided that "the precise terms and conditions of every appointment" should be stated in writing. Upon adoption of these regulations, the University allowed petitioner 4-years' credit on his probationary period, because of his previous academic service. Thus, it was necessary for him to serve only 3 additional years in a probationary status, or until July 1, 1955; and if the University did not intend to give him permanent tenure status at that time, it was required under its regulations to give him written notice not later than July 1, 1954. On March 26, 1954, the head of the accounting department of the University's School of Business Administration wrote to the dean of such school, as follows: "I desire to recommend that John P. Devereaux, Assistant Professor of Accounting, be granted permanent tenure. He has assured me that he will start next summer to study for a Ph. D. Degree at the University of Pittsburgh. He is also working to pass the Accounting Practice Section of the C.P.A. Examination in New Jersey. I believe that in the long run *207 he will prove a valuable member of the staff." Petitioner was never notified that his contract was not to be renewed; and as of July 1, 1955, he was granted permanent tenure status by a letter signed by the provost of the University. Such permanent tenure was granted without any special terms or conditions; and there was no requirement that he study toward a doctor's degree in order to retain his status. It was the current practice of the University however, not to consider a faculty member for promotion from the rank of assistant professor to that of associate professor, until he had been awarded a doctor's degree. In June 1954, which was only a few weeks prior to the above-mentioned date on which the University had to notify him of any intention not to renew his contract, petitioner commenced study at the University of Pittsburgh toward a degree of Doctor of Philosophy. He pursued such study periodically, while he was still carrying on his duties as a full-time assistant professor at Penn State; and at the time of the trial herein, which was nearly 5 years later, he apparently was still continuing such study. Prior to July 1, 1955, when petitioner was accorded permanent tenure, *208 he engaged in his study toward a Ph. D. degree for the purpose of influencing the University's decision with respect to granting him permanent tenure, and also in order to qualify himself for promotion in rank and for salary increases. And after he had been accorded permanent tenure, he continued such study because of the assurances given to his department head that he would seek such a degree, and also here again to qualify himself for promotions and salary increases. Petitioner believed that his failure to acquire a doctor's degree would greatly limit his prospects for salary increases. During the taxable year 1955, petitioner expended $1,336.56 in connection with his above-mentioned doctoral studies at the University of Pittsburgh; and in the taxable year 1956, he similarly expended $556.74. These expenditures were for tuition, meals, lodging, and transportation. On his income tax returns for said years, he deducted these amounts as expenses for education. The respondent disallowed the same, on the ground that they represented nondeductible personal expenditures. The correctness of the respondent's action is the sole issue here presented. The pertinent statutory provision herein *209 is section 162(a) of the 1954 Code, which makes provision for the deduction of ordinary and necessary expenses incurred "in carrying on any trade or business." The applicable regulation issued under this section is section 1.162-5, Income Tax Regulations, which so far as here material is set forth in the margin. [2]
*210 It is well settled that deductions for income tax purposes are allowable only where clearly provided under the statute. New Colonial Co. v. Helvering, 292 U.S. 435; James G. Whitaker, 34 T.C. - (No. 11, April 29, 1960). And a taxpayer has the burden of justifying the allowance of any deduction. White v. United States, 305 U.S. 281. It is our opinion that petitioner has not brought himself within these principles. The intent of section 162(a) of the Code is, as above stated, to allow a deduction for the ordinary and necessary expenses of "carrying on" any trade or business; and, in general, this comprehends expenses incident to earning the income of the taxable year, as distinguished from expenditures for permanent improvements or betterments (see section 263) and expenditures which are personal in character (see section 262). Also, the above-cited regulations provide consistently with such standard, that expenditures made for education are deductible if they are undertaken primarily for the purpose of maintaining or improving skills required in the taxpayer's employment, or for meeting the express requirements of the taxpayer's employer; but that they *211 are not deductible if such expenditures are undertaken primarily for the purpose of obtaining a new position, or of obtaining substantial advancement in position, or of fulfilling the general educational aspirations or other personal purposes of the taxpayer. In the instant case, the petitioner had been employed on a probationary basis since September 1950; and he knew that, under the University's regulations relating to academic tenure, the University had to give him written notice by July 1, 1954, if it did not intend to renew his contract - for otherwise his then temporary status would become permanent. As stated by petitioner in his reply brief, "Of course he [petitioner] understood that once he had reached July 1, 1954, without notice of dismissal, he was under the wire." He actually began his studies toward the Ph. D. degree in June 1954, which was only a few weeks before he went "under the wire." Thus we are convinced that his continuation of such studies during the years 1955 and 1956 here involved, which were subsequent to the time when his academic tenure in his existing position had become secure, was not primarily for the purpose of maintaining his existing position. *212 Indeed he concedes that there was no requirement, either under any written contract with the University or under its academic regulations, that he study for a doctorate degree in order to maintain his position. Nor has petitioner shown that this pursuit of the doctoral studies was primarily for the purpose of maintaining or improving his skills in his existing employment. We are convinced that petitioner's primary purposes in pursuing such studies were to qualify himself for a new and better position and to obtain the salary increases that attached to such an improved position. While it is, of course, admirable that petitioner should have attempted to seek advancement, satisfy his personal aspirations, and increase his prestige, we are impelled to conclude that the costs of such endeavors do not qualify for deduction under section 162(a), as expenses attributable to "carrying on" his existing employment, or to earning the taxable income therefrom. Such expenditures are rather, in the nature of capital expenditures which are personal in character and nondeductible for income tax purposes. As was said by Justice Cardozo in Welch v. Helvering, 290 U.S. 111, "Reputation *213 and learning are akin to capital assets, like the good will of an old partnership. * * * For many, they are the only tools with which to hew a pathway to success. The money spent in acquiring them is well and wisely spent. It is not an ordinary expense of the operation of a business." The authorities upon which petitioner relies do not support his position; these include: Hill v. Commissioner, (C.A. 4) 181 F. 2d 906, reversing 13 T.C. 291; Robert S. Green, 28 T.C. 1154; and Marlor v. Commissioner, (C.A. 2) 251 F. 2d 615, reversing 27 T.C. 624. In all these cases, the allowance of the deduction was based upon the fact that the taxpayer incurred the educational expense in order to maintain his existing position, rather than to qualify himself for a new and improved position. Indeed, in the Marlor case, the Court of Appeals expressed its agreement with the dissenting opinion below, in which it was stated (27 T.C. at page 626): "The expenses incurred by petitioner had a dual objective. On the one hand, the attainment of the doctorate was necessary in order to qualify for appointment to the permanent staff, *214 and I assume, arguendo, that if such were the only purpose, the expenses would not be deductible any more than educational expenses generally that are incurred by one who is preparing for his profession or calling in life. * * *" We sustain the determination of the respondent. Decision will be entered for the respondent. Footnotes
1. The above amounts are "statutory" deficiencies which, pursuant to section 6211(b)(1) of the 1954 Code, were determined without regard to any credit under section 31 for taxes withheld on wages. The parties agree that for the year 1956, such credit allowable to petitioners will result in an overpayment of tax, irrespective of whether the above-mentioned "statutory" deficiency for said year is approved; and that if the respondent's determined deficiency for said year is approved, the amount of overpayment will be $231.82 as he determined.↩
2. § 1.162-5. Expenses for education. - (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. If it is customary for other established members of the taxpayer's trade or business to undertake such education, the taxpayer will ordinarily be considered to have undertaken this education for the purpose described in subparagraph (1) of this paragraph. Expenditures for education of the type described in subparagraph (2) of this paragraph are deductible under subparagraph (2) only to the extent that they are for the minimum education required by the taxpayer's employer, or by applicable law or regulations, as a condition to the retention of the taxpayer's salary, status, or employment. * * * (b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken primarily for the purpose of obtaining a new position of substantial advancement in position, or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. The fact that the education undertaken meets express requirements for the new position or substantial advancement in position will be an important factor indicating that the education is undertaken primarily for the purpose of obtaining such position or advancement, unless such education is required as a condition to the retention by the taxpayer of his present employment. In any event, if education is required of the taxpayer in order to meet the minimum requirements for qualification or establishment in his intended trade or business or specialty therein, the expense of such education is personal in nature and therefore is not deductible. * * *↩