ARNOLD COHN AND ELEANOR COHN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cohn v. Commissioner
Docket No. 16960-80.
United States Tax Court
T.C. Memo 1985-480; 1985 Tax Ct. Memo LEXIS 150; 50 T.C.M. (CCH) 1052; T.C.M. (RIA) 85480; September 16, 1985. *150 Petitioners, both of whom were employed as full-time physical education teachers, paid for family memberships at four racquetball and handball facilities and the related costs for lessons and court time. Petitioners' children did not use these facilities through petitioners' memberships. Held: Amount of allowable education expense deduction determined. Sec. 162, I.R.C. 1954, and sec. 1.162-5(a), Income Tax Regs.; Cohan v. Commissioner,39 F.2d 540 (CA2 1930). Arnold and Eleanor Cohn, pro se. Linda A. Jackson, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioners for 1978 in the amount of $574. After concessions by both sides, the issue for decision is whether petitioners (both of whom were employed as physical education teachers) may deduct under section 162[1] the amounts they paid for family memberships at four racquetball and handball facilities and the related costs for lessons and court time. FINDINGS *151 OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioners Arnold Cohn (hereinafter sometimes referred to as "Arnold") and Eleanor Cohn (hereinafter sometimes referred to as "Eleanor"), husband and wife, resided in Zion, Illinois. Petitioner-Husband's Employment
Arnold has earned a bachelor of science degree and a master of science degree, and has 51 credit-hours of post graduate education, specializing in the area of physical education. He has been employed as a teacher for 24 years. During 1978, Arnold was employed as a full-time physical education teacher by the Waukegan Public Schools, Community Unit School District No. 60, Lake County, Illinois (hereinafter sometimes referred to as "Waukegan Public Schools"). He taught at Waukegan West High School, Waukegan, Illinois (hereinafter sometimes referred to as "WWHS"). At WWHS, Arnold taught five physical education classes; one class was a "specialized adaptive" physical education class, while the other four classes were regular physical education classes. Each class met for one hour per day, 5 *152 days a week. The regular classes were comprised of students who did not have mental, emotional, or physical handicaps. The activities that Arnold taught to these students included gymnastics, football, tennis, swimming, softball, wrestling, and volleyball. Arnold did not teach handball or racquetball to any of these students. The "specialized adaptive" physical education class taught by Arnold was comprised of students having mental and emotional disturbances, neuromuscular problems, or various physical handicaps (i.e., hand and eye coordination problems, visual impairment, epilepsy, or cardiovascular problems).The activities that Arnold taught to these students included swimming, handball, racquetball, and specialized weights.Arnold established an individualized program for each child in his "specialized adaptive" physical education class. Arnold began playing handball many years ago, in college, and was far more proficient at handball than the students he taught in 1978. While Arnold did not play racquetball in college, he did learn how to play before he began teaching it to his students. In addition to his teaching position, Arnold was also employed during 1978, as a salesman *153 for Onan Construction, Gurnee, Illinois. Petitioner-Wife's Employment
Eleanor has been employed as a teacher for the Beach Park Consolidated Schools, District No. 3, Zion, Illinois (hereinafter sometimes referred to as "Beach Park") for 13 years. During 1978, Eleanor was employed as a full-time physical education teacher by Beach Park and taught at Oak Crest Junior High School (hereinafter sometimes referred to as "Oak Crest"). At Oak Crest, Eleanor taught six, 45-minute classes per day, 5 days a week. Eleanor taught "adaptive" physical education (for children having neuromuscular capacities which are about 90 to 95 percent of those of normal children), as well as regular classes. The activities that Eleanor taught to her students included racquetball, aerobics, gymnastics, swimming, volleyball, soccer, softball, and speedaway.Eleanor taught racquetball to her students because it is a sport which people of varying abilities can play. Employers' Requirements
Each Illinois school district is governed by the Illinois School Code. In relevant part the Illinois School Code (as in effect for 1978) provides as follows: Sec. 21-23. Suspension or revocation of certificate. Any certificate *154 issued pursuant to this Article may be suspended for a period not to exceed one calendar year by either the county superintendent of schools or Superintendent of Public Instruction upon evidence of immorality, a condition of health detrimental to the welfare of pupils, incompetency, unprofessional conduct, the neglect of any professional duty or other just cause. Unprofessional conduct shall include refusal to attend or participate in, institutes, teachers' meetings, professional readings, or to meet other reasonable requirements of the county superintendent of schools or Superintendent of Public Instruction. It shall also include neglect or unnecessary delay in making of statistical and other reports required by school officers. * * * Sec. 24-5. Physical fitness and professional growth. School boards shall require of new employees evidence of physical fitness to perform duties assigned and freedom from communicable disease.Such evidence shall consist of a physical examination made by a physician licensed in Illinois to practice medicine and surgery in all its branches not more than 90 days preceding time of presentation to the board and cost of such examination shall rest with *155 the employee. The board may from time to time require an examination of any employee by a physician licensed in Illinois to practice Medicine and surgery in all its branches and shall pay the expenses thereof from school funds. School boards may require teachers in their employ to furnish from time to time evidence of continued professional growth. In Policy Statement No. 4116.31 (as in effect for 1978), Waukegan Public Schools details the rights, responsibilities, and duties of a teacher in the school district. In particular this policy statement sets forth under the heading "General Functions", the following: 2. The teacher in the Waukegan Public Schools is obligated to the learner - to recognize and to understand his unique nature, to promote his worth and dignity, and to strive for his educational success. * * * 4. The teacher is a professional whose time, talents, energies, and actions are directed toward his individual teaching assignment, the total program of his school, and his continuing professional growth. Under the heading of "Teaching and Curriculum Responsibilities", Policy Statement No. 4116.31 provides in relevant part that-- 11. [The teacher] [w]ill plan flexible *156 learning experiences which are compatible with the curriculum, the educational objectives of the school system, and the needs and abilities of the pupils. Under the heading of "Professional and Community Responsibilities", Policy Statement No. 4116.31 provides in relevant part that-- 7. [The teacher] [w]ill demonstrate continued interest and effort in personal educational growth and improvement. The Facilities
In 1978, petitioners paid a total of $1,169 for club memberships, court time, and handball and racquetball lessons with respect to the following facilities: (1) YMCA, Waukegan, Illinois (businessman's family membership); [2] *157 (2) Oakwood Racquetball & Tennis Club, Waukegan, Illinois (family membership); (3) Sky Harbor Racquetball & Handball Club, Highland Park, Illinois (family membership); and (4) Courts on Twenty Two, Deerfield, Illinois (family membership). These facilities are hereinafter sometimes referred to collectively as "the Facilities" and individually as "the YMCA", "Oakwood", "Sky Harbor", and "Courts", respectively. About 60 percent of these expenditures were made by Arnold, with the remainder made by Eleanor. In 1978, Arnold used all four of the Facilities. At the YMCA, Arnold played handball, observed clinics in handball, and practiced teaching handball to students from WWHS (regardless of whether the students were enrolled in his physical education classes). Arnold observed racquetball at the YMCA, but did not play it there. Many students from WWHS, came to the YMCA to seek additional help for whatever they were doing; Arnold worked with them without charge. The additional instruction helped Arnold to become a more efficient teacher. At Oakwood, Arnold played racquetball, handball, and handball against racquetball. Arnold applied the same teaching concept that he learned by playing handball against racquetball when he taught his "specialized adaptive" physical education class; he matched *158 children with impaired vision (who used a racquet) against those without impaired vision (who used their hands). Arnold attended clinics at Sky Harbor and Courts. The clinics were conducted by a professional; through this instruction, Arnold refined the teaching techniques which he used when he taught his classes. Eleanor learned to play racquetball at Oakwood in 1978. At Courts, Eleanor played racquetball; she also attended some clinics which taught her how to play racquetball so she could teach the activity to her students. Eleanor did not use any of the facilities at the YMCA in 1978 and was not a member of Sky Harbor in 1978. Petitioners were not expressly required by their respective employers to join any of the Facilities. Petitioners' children did not use any of the Facilities through petitioners' memberships. On at least some occasions, petitioners derived personal pleasure from playing racquetball or handball. OPINION Petitioners maintain that the total of the amounts they paid for family memberships at the Facilities and the related costs for lessons and court time ($1,169 in all) is deductible as ordinary and necessary trade or business education expenses because the *159 education for which the expenditures were made, was (1) to maintain or improve the skills of both petitioners in their respective employments and (2) to meet the requirements of the applicable law or regulations. [3] *160 In addition, petitioners maintain that Arnold's education expenses are deductible because he also met the express requirements of his employer. Respondent contends that the education expenses are nondeductible personal expenses. While "[r]espondent concedes, that perhaps, the petitioners may have been entitled to deduct, as educational expenses, the costs of a few workshops or lessons in racquetball or handball, as the case may be, pursuant to I.R.C. § 162 and Treas. Reg. § 1.162-5(a)(1) * * * [It is respondent's position that] the expenditures incurred by the petitioners, are so unreasonable, unjustifiable and excessive in amount so as to preclude a finding that they constituted 'ordinary and necessary' business expenses pursuant to I.R.C. § 162." [4]
Petitioners insist that the full $1,169 is deductible; respondent counters that no part is deductible. We agree in part with each side. [5]
Personal expenses are not deductible, unless the contrary is "expressly provided" in chapter 1 (sec. 262) [6]. Ordinarily, education expenses are regarded as personal. See, e.g., Welch v. Helvering,290 U.S. 111, 115-116 (1933). However, section 162(a)[7]--which is in chapter 1--expressly provides for the deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. As section 162(a) has been interpreted, education expenses may constitute deductible *161 trade or business expenses if the education for which the expenses are made (1) maintains or improves the skills required in the taxpayer's employment or other trade or business, or (2) meets the express requirements of the taxpayer's employer (or of applicable law or regulations) imposed as a condition for the taxpayer to retain an established employment relationship. See, e.g., section 1.162-5(a), Income Tax Regs.[8] *162 The Treasury Regulations do not define the term "education". We have held ( Lage v. Commissioner,52 T.C. 130, 134 (1969)) as follows: "Education" includes not merely instruction in a school, college, university, or a formally conducted training program, but embraces the acquiring of information and knowledge from a tutor. * * * It is clear that the deduction for educational expenses is not limited to formal or institutional education. * * * Further, "education" also may include informal self-teaching. Boser v. Commissioner,77 T.C. 1124 (1981), affd. by unreported order (CA9 1983). Whether education maintains or improves skills required by petitioners in their employment is a question of fact. Boser v. Commissioner,77 T.C. at 1131. The burden is on petitioners *163 (see, e.g., Welch v. Helvering,290 U.S. at 115; Rule 142(a) [9]) to prove that there was a direct and proximate relationship between petitioners' learning how to maintain or improve their skills in playing and teaching racquetball or handball, and the skills required in their employment as physical education teachers. Kornhauser v. United States,276 U.S. 145, 153 (1928); Carroll v. Commissioner,418 F.2d 91, 95 (CA7 1969), affg. 51 T.C. 213, 219 (1968); Boser v. Commissioner,supra;Schwartz v. Commissioner,69 T.C. 877, 889 (1978). A precise correlation is not necessary and the education expense need not be for training which is identical to petitioners' prior training, so long as the education enhances petitioners' existing skills. Boser v. Commissioner,supra;Schwartz v. Commissioner,supra.
Arnold attended clinics at Sky Harbor and Courts. At the YMCA, Arnold practiced teaching to WWHS students. Eleanor attended clinics at Courts. At Oakwood, Eleanor learned to play racquetball and Arnold developed his approach to handball-racquetball competition. Both petitioners then used *164 these skills in their teaching. All of the foregoing involves the maintenance or improvement of skills required in petitioners' employments as physical education teachers. We believe that the business aspect of the foregoing activities predominates over the personal pleasure or general fitness aspect of petitioners' activities at the Facilities. However, we do not have any clear views as to how much of petitioners' use of the Facilities (and their costs for particular uses) was essentially for pleasure or for general physical or mental well-being, of the sort that is useful to substantially all of us and not particularly to physical education teachers. [10] *165 *166 Compare Carroll v. Commissioner,supra, and Stemkowski v. Commissioner,82 T.C. 854 (1984), with Denny v. Commissioner,33 B.T.A. 738 (1935), and Hutchison v. Commissioner,13 B.T.A. 1187 (1928). Doing the best we can with an inadequate record, and "bearing heavily * * * upon the taxpayer[s] whose inexactitude is of * * * [their] own making" ( Cohan v. Commissioner,39 F.2d 540, 544 (CA2 1930)), we conclude that $200 of the claimed education expense is deductible by petitioners. On brief, respondent contends that "should the Court find that only a portion of the expenditures incurred by petitioners may have qualified for deductibility, e.g., initial racquetball *167 lessons, the claimed deduction should, in any event, be denied in full, due to the petitioners' failure to allocate the claimed expenses between those amounts expended for club memberships and those expended for lessons etc." We reject respondent's argument. Where (as in the instant case) petitioners have proven that respondent's determination is in error, "it may not reasonably be held that * * * [petitioners are] bound to pay a tax that confessedly * * * [they do] not owe, unless * * * [their] evidence was sufficient also to establish the correct amount that lawfully might be charged against * * * [them]." Helvering v. Taylor,293 U.S. 507, 515 (1935). We are obligated to determine the amount of petitioners' allowable deduction. Cohan v. Commissioner,supra.See Commissioner v. Maresi,156 F.2d 929, 931 (CA2 1946) ("The one sure way to do injustice * * * is to allow nothing whatever upon the excuse that we cannot tell how much to allow"); cf. Rudd v. Commissioner,79 T.C. 225, 236-237 (1982). Similarly, we reject petitioners' contention that all $1,169 of their expenses are deductible because the education for which the expenditures were made was undertaken to meet the requirements *168 of the Illinois School Code, or the Waukegan Public Schools policy statement, or the express requirements of Arnold's employer. To the extent that the education maintains or improves Arnold's or Eleanor's skills as physical education teachers, we have determined to allow the deductions. To the extent that the education is essentially for general pleasure or general physical or mental well-being, the education was not required by applicable law or regulations or Arnold's employer. We hold that petitioners are entitled to deduct $200 of the $1,169 claimed expenses, and are not entitled to deduct the remainder. In order to take account of the foregoing and of the parties' concessions of other issues, Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
2. The parties have stipulated that each of the club memberships was a "family membership" or "businessman's family membership" but have not enlightened us as to how this differed from any other form of membership. We find, infra,↩ that during 1978 (1) Eleanor was not a member of one of the facilities, (2) Eleanor did not use another one of the facilities, and (3) petitioners' children did not use any of the facilities through petitioners' memberships.
3. On their 1978 Federal individual income tax return, petitioners claimed a deduction of $1,169 for "physical conditioning expense" as an employee business expense of Arnold, with respect to his employment by Waukegan Public Schools. Petitioners assert that this was incorrectly described on their tax return and that the correct description is that appearing in the text, supra.↩
4. Respondent does not contend that a deduction otherwise allowable under section 1.162-5(a), Income Tax Regs., should be disallowed because of the operation of the minimum-education-requirements or new-trade-or-business provisions of section 1.162-5(b), Income Tax Regs. See, e.g., Garwood v. Commissioner,62 T.C. 699, 703-704↩ (1974).
5. See Rudd v. Commissioner,79 T.C. 225, 238↩ n.17 (1982).
6. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
7. Section 162(a) provides in relevant part as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * ↩
8. Sec. 1.162-5. Expenses for education. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education-- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.↩
9. Unless indicated otherwise, all rule references are to the Tax Court Rules of Practice & Procedure.↩
10. In a recent interview, Louis Nizer stated that-- the talent which a lawyer needs, in addition to purely legal talents--being a scholar and showing distinctions in cases and all the rest--is to be an all-around man in the sense of a cultured man. Even physically, in sports, you can't graduate from Columbia College without being able to swim a certain number of hundred yards in the pool. I think it is a good rule. It isn't enough that you know the legal authorities. You ought to also be generally competent. It is the theory of keeping physically well. That leads me to an anecdote that is a reminiscent one and one that I doubt anyone still remembers. Dean Stone, who later became the Chief Justice of the Supreme Court of the United States, was Dean of Columbia Law School while I was there. In Columbia, you graduated from college, and you went into the law school course, a combined course of six years. And we all went eagerly to hear Dean Stone give his lecture before we entered the law school. And I recall how excited we were; we thought we were going to be told where the bright shining opportunities were in the practice of law, where the boulders were and the trees for shade. To my astonishment and everyone else's, his main theme was, "If you're not a man of very good health, please don't go into this profession. It is the most arduous profession known to man. And unless you are physically fit and also naturally healthy, if you have any defects in your health, change now, before you come into this school. I recall how disappointed many of us were. We thought we were going to hear some tremendously exciting advice about the legal profession. Instead of that, we heard the lecture that we ought to be good physical specimens. He was right. The law profession is so arduous. I once said that a lawyer who doesn't lose at least six to ten pounds in a trial is not a good advocate, because he will probably work late at night, twelve o'clock, two o'clock, three o'clock in the morning. I have on many occasions never gone to bed, just washed my face in the morning, shaved, and gone back to court. It is a very, very arduous profession. Schwartz, Interview with Louis Nizer, 11 A.B.A. Litigation Section Journal 31, 33-34 (Spring 1985).↩