RICHARD SEIBOLD AND MELBA Y. SEIBOLD, (HUSBAND AND WIFE), PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 61995. Filed February 24, 1959.

*George J. Pfeiffer, Esq.,* for the petitioners.
*A. Jesse Duke, Jr., Esq.,* for the respondent.

MULRONEY, *Judge:* Respondent determined a deficiency in the income tax of petitioners for 1952 in the sum of $1,051.62 and additions thereto under section 294 (d) (1) (A) and (d) (2), I. R. C. 1939, in the amounts of $56.92 and $34.16, respectively.

The question presented is whether petitioners were entitled, under the provisions of section 23 (a) (1) (A), I. R. C. 1939, to a deduction of $3,224.25 in the year 1952, as educational expenses.

### FINDINGS OF FACT.

Some of the facts were stipulated and they are found accordingly. Petitioners, Richard and Melba Y. Seibold, are husband and wife who reside in Buffalo, New York. They are both music teachers in the public schools of Buffalo and they filed their joint income tax return for the year 1952 with the district director of internal revenue at Buffalo.

Schoolteachers in New York State are licensed and governed by the

"Regulations of the Commissioner of Education of the State of New York." These regulations make provisions for the educational requirements necessary to secure permanent certificates, valid for teaching common branch subjects and certificates valid for teaching special subjects and they define the teaching of music as a special subject. They also provide for what is called "In-service study and training" which means that the holder of a permanent certificate for teaching a special subject "shall during each successive ten-year period from date of issuance complete six semester hours in approved courses or the equivalent in approved and appropriate professional activity such as membership in study groups for professional and cultural improvement, travel, educational research, authorship, cooperating critic and demonstration teaching, occupational experience, leadership in extra school activities, leadership in professional associations and leadership in appropriate community activities."

Richard was the holder of a permanent certificate, granted in 1950, qualifying him to teach a special subject, and during 1952 he was head of the music department and taught music courses at the Cleveland High School in Buffalo.

Melba was the holder of a certificate granted sometime prior to 1942, qualifying her to teach common branch subjects. Under the regulations the validity of this certificate could be extended by the Commissioner of Education, "to include the teaching of a special subject on evidence that the holder thereof has completed an additional 45 semester hours in approved technical and professional courses related to the field, for which the extension of validity is to be granted."

In the year 1942 Melba was requested by the school district to teach a music course in the Cleveland Hill School. She accepted and she continued to teach music at this school every year from 1942 to 1951 by virtue of a temporary certificate granted to her by the school board and the Department of Education of the State of New York, which was renewed annually. During all of these years Melba did not have the required credits to enable her to secure a permanent certificate to teach a special subject such as music, though she did secure some additional credits in 1944 and 1945. In 1951 Melba was notified, either by the school board or the State Department of Education, that her temporary certificate would not be renewed again.

In the summer of 1952 petitioners took a European travel tour organized by the Swiss Educational Service of New York City at a cost of $1,245 each. The detailed itinerary of this trip starts with the flight from Idlewild Airport in New York on June 23 and the arrival in Paris, France, the next day. It provided for about a 2-week stay in France with many visits to places of historical interest in Paris, Versailles, Tours, Vichy, Grenoble, Nice, and Monte

Carlo. Starting with July 4, it provided for about a 12-day stay in Italy with visits to places of historical interest in Genoa, Florence, Rome, Venice, and Milano, with sometimes a free day for shopping in some of the cities. The itinerary provided for arrival in Switzerland about July 18 with visits in Sierre, and sightseeing tours in Geneva and registration in the University of Geneva on July 21 for a 2 weeks' course, with several weekend excursions to places of interest around Geneva. Next it provided for a train trip back to Paris and arrival there on August 18 and a sightseeing tour that day and the next day to be a "[f]ree day in Paris for shopping and packing." The next trip was to London via train to Calais, France, and channel boat to Dover, and thence by train to London with arrival in London on August 21 and sightseeing tours in London on that day. August 22 was an excursion to Oxford and Stratford on Avon and August 23 was a "[f]ree day in London for shopping and packing." The itinerary provided for the flight from London on August 24 and arrival back at Idlewild Airport in New York on August 25.

The $1,245 cost of the entire trip included all transportation, hotel accommodations, meals, and the tuition for the 2-weeks' course at Geneva University. Richard did not attend the University but, upon his return, he was given 2 credits toward the inservice requirement after submitting a detailed report of the places visited and his idea of the benefits he derived from the trip. Melba did attend the 2 weeks' course at Geneva and she was given 6 hours' credit toward the requirement necessary to validate her common branch certificate for the teaching of a special subject such as music. Also in 1952 Melba attended New York University where she earned 24 credits and Columbia University, where she earned 2 credits, and after receiving all of these credits she received her permanent certificate to teach music and thereafter did teach music in the same school and at the same salary she had previously taught under the temporary certificate.

It was stipulated Melba's tuition at New York and Columbia Universities and cost of her lodging and meals while attending the universities, were in the total sum of $734.25.

OPINION.

The first question is whether the $1,245 expended by Richard for the European tour in 1952 is deductible as an ordinary and necessary expense incurred in the pursuit of his trade or business under the provisions of section 23 (a) (1) (A) of the Internal Revenue Code of 1939.[1]

---

[1] All section references are to the Internal Revenue Code of 1939, as amended, unless otherwise noted.

Section 24 (a) (1) provides that in computing net income "no deduction shall in any case be allowed in respect of * * * Personal, living, or family expenses" except certain medical expenses not applicable here.   Section 23 (a) (1) (A) provides there shall be allowed as deductions "[a]ll the ordinary and necessary expenses paid * * * in carrying on any trade or business."

Petitioners had the burden of showing the deductions were not in respect of personal or family expenses and that they were both ordinary and necessary in carrying on their business as teachers.   In deciding whether the statutory necessities for a deduction have been complied with, we need only concern ourselves with whether the expenses were both ordinary and necessary in carrying on the taxpayer's trade or business.   If they were, the deduction follows.   If the expenses were not ordinary and necessary in carrying on the taxpayer's trade or business, then presumably they were personal, or, in any event, not deductible.   *Manoel Cardozo*, 17 T. C. 3.   *Hill* v. *Commissioner*, 181 F. 2d 906, reversing 13 T. C. 291 was followed in *Robert S. Green*, 28 T. C. 1154.   In the *Hill* case a teacher was notified that her teaching certificate had expired and that her contract would not be renewed unless she complied with a regulation that she obtain college credits or pass an examination on five books selected by the State Department of Education.   The court held the teacher's expenses incurred in attending summer school to obtain the required college credits were ordinary and necessary business expenses, and, therefore, deductible, the opinion saying:

Clearly, the very logic of the situation here shows that she went to Columbia to maintain her present position, not to attain a new position; to preserve, not to expand or increase; to carry on, not to commence. * * *

The court, in the cited case, was careful to say in the opinion: "Our decision is limited to the facts of the case before us" and the opinion points out the teacher's "attendance at summer school was undertaken essentially to enable [her] to continue her * * * career in her * * * existing position."   And the opinion states with respect to the alternative requirements that "she chose the alternative which would most effectively add to her efficiency as a teacher" and it is further stated with respect to these alternatives: .

If the particular course adopted by the taxpayer is a response that a reasonable person would normally and naturally make under the specific circumstances, that would suffice. * * *

Petitioners' whole argument that Richard's expenses of his European tour were ordinary and necessary business expenses is to treat them as analogous to the summer school expenses of the teacher in *Hill* v. *Commissioner, supra*.   Like the teacher in the *Hill* case, he had to secure credits in order to validate his certificate in order to maintain

and preserve his present position. As in the *Hill* case he had alternative ways of securing these credits, such as going to school or travel. The only difference is that he chose travel instead of school; whereas the taxpayer in the *Hill* case chose going to school instead of standing an examination on five books. Petitioner treats this difference as a factual immateriality.

We think it would be an unwarranted extension of the doctrine of the *Hill* case to hold Richard's expenses of a European sightseeing tour were ordinary and necessary expenses for the purpose of carrying on a trade or business, under the facts and circumstances disclosed by this record.

We do not think the mere granting of educational credits to the traveler renders the expense an ordinary and necessary business expense, even though those credits are applicable toward the credit requirements of the inservice program. Merely because necessary credits are obtained in some permissible way does not mean the expense incurred by the teacher in securing them is deductible. Going to summer school can well be considered an ordinary way for a teacher to obtain the required credits but a sightseeing trip to Europe as a form of education is something less than ordinary. Granting that the sightseeing trip to Europe would have educational value, it still does not satisfy the test of being the ordinary way for a teacher to earn a couple of his required credits.

We could not find under this record that the European tour was undertaken by Richard *essentially* to enable him to secure credits to maintain his teaching position. If he were seeking credits, he could have joined his wife in attending Geneva University at no added cost and earned 3 times the credits allowed him for the tour. It fairly appears from the record that the European tour was a sightseeing tour and we could not find from this record that choosing the taking of such a tour as a means of securing 2 needed credits would be the choice that a "reasonable person would normally and naturally make" within the words of the *Hill* case.

Of course, it was *necessary* for Richard to obtain the credits but we do not think it follows that, from this necessity, there flows the compulsion to take the European trip. However, we do not need to decide the question of necessity. The record fails to establish the expenses of the trip were ordinary expenses paid in carrying on Richard's business of teaching.

Melba received no credits for taking the European tour. Her contention, however, is that her expenses for this tour in the sum of $1,245 should be allowed because of the 6 hours' credit she received for attendance at the University of Geneva and also the expenses in the sum of $734.25 for attendance at New York and Columbia Uni-

1022

versities that produced 26 credits. Apparently the 32 credits she secured in 1952 were sufficient, with the credits she had previously secured in 1944 and 1945, to give her the necessary 45 in order to secure a permanent certificate to teach a special subject such as music.

The situation with respect to Melba is distinguishable from the *Hill* case. She pursued her studies in order to acquire a permanent position—a position she had not held during the years she had taught under a temporary certificate. The situation is much like the facts in *Robert M. Kamins*, 25 T.C. 1238. There the taxpayer was employed by a university with the understanding that he would later obtain his doctorate degree. His expenses incurred in securing a doctorate degree, so he could secure a permanent position with the university, were held not deductible, the Opinion stating:

Since a doctorate degree was an essential requirement to any right to a permanent position, the expenditures in connection with obtaining the doctorate were clearly for "commencing" and "increasing" and not for "carrying on" or "preserving." *Hill v. Commissioner, supra,* is thus clearly distinguishable.

Respondent's disallowance of all of Melba's expenses in connection with her attendance at Geneva, New York, and Columbia Universities was correct.

The parties stipulated the correctness of the imposition of the additions to tax under the provisions of section 294 (d) (1) (A) and (d) (2) and that the ultimate holding as to deficiencies will, accordingly, modify such additions as determined in the notice of deficiency.

*Decision will be entered under Rule 50.*