Thomas P. Dennehy v. Commissioner.
Dennehy v. Commissioner
Docket No. 73349.
United States Tax Court
T.C. Memo 1961-151; 1961 Tax Ct. Memo LEXIS 201; 20 T.C.M. (CCH) 750; T.C.M. (RIA) 61151; May 25, 1961
Thomas P. Dennehy, pro se, 7325 Clinton Ave., Cleveland, Ohio. J. P. Graham, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined a deficiency in income tax for the year 1955 in the amount of $183.60. Petitioner claims an overpayment, as a result of an amended return, in the amount of $333.13. The sole remaining issue is whether the expenses of European travel are deductible by petitioner, who was a university instructor in mathematics. Findings of Fact Petitioner timely filed an individual income tax return for the calendar year 1955 and an amended return on August 10, 1956, each with the district director of internal revenue, Cleveland, Ohio. The deficiency results from the disallowance of deductions in the amount of $828.54 for sabbatical summer *202 travel and in the amount of $6 for Ohio cigarette tax claimed by petitioner on his original 1955 tax return. The amended return filed by petitioner claims a refund and overpayment in the amount of $333.13, and alleges a deduction in the total amount of $2,461.87 for sabbatical summer travel during 1955. It fails to claim any deduction for Ohio cigarette tax. Petitioner was employed at John Carroll University in Cleveland, Ohio (sometimes hereafter called the University), as a fulltime instructor in mathematics from June 1953 to August 1956. He was employed on a 12-month basis in accord with the contract offer made by the University to him and subsequently accepted by him. Petitioner was employed under the same terms through the summer of 1955. This contract offer contains the following sentence: "On the annual basis, you will be expected to teach in the summer sessions, and every third summer you are free with pay in order to advance yourself in study and research." The John Carroll University Faculty Handbook, dated 1953 (hereafter called the handbook), was in use during the summer of 1955 to set forth administrative policies: The "sabbatical summer" referred to in the handbook *203 is the same as the "summer on leave" with pay also referred to in the handbook in the outline therein of the faculty 12-month salary plan. The handbook contains the following statements relating to the "twelve-month salary plan" and the "sabbatical summer": The teacher receives [under this plan] an increase in his present regular instructional salary of thirty-three and one-third per cent. Under this plan the teacher is expected to teach two out of three summers, and must spend the other summer on leave in a year convenient to the University as determined by the Dean. As the sabbatical summer is designed to make members of the faculty better teachers, it may be used only for travel, reading, resting, and self-improvement and not for consulting work or other forms of employment to augment their University salaries. As to retention of employment by the faculty, the faculty handbook reads: No members of the Faculty shall be retained, much less promoted, unless he has given evidence of improving himself scholastically by doing graduate work when this is advisable, or by special research, or by efficient teaching. The third summer of petitioner's employment under his contract *204 with the University was the summer of 1955. Petitioner was permitted to treat the summer of 1955 as a free summer with pay for the purpose of advancing himself in study and research. Petitioner traveled in Europe during the summer of 1955, leaving Cleveland on June 8, 1955 and returning September 16, 1955. This was his first trip abroad. In the course of this trip petitioner expended $2,461.87 as travel expenses. On his trip he visited or passed through eleven countries as follows: France, Italy, Spain, West Germany, East Germany, Belgium, Holland, England and Scotland, Ireland, Switzerland and Austria. He shopped, visited museums, churches, and places of historic or religious interest. Petitioner's activities on his trip were not different from those reasonably expected of any other tourist of his age on a sightseeing trip abroad. No report of travel activity as to a sabbatical summer was required of the University faculty members in 1955. Petitioner submitted no report to the University of his travel before or after his sabbatical summer. The major consideration in employing an instructor at the University is the caliber of his teaching and petitioner was one of the best *205 teachers of mathematics at the University. Many members of the faculty did not travel during their sabbatical summer and there is no known instance where a past or present faculty member had been discharged for that reason. The only sanctions which might result from utter failure to use the sabbatical summer in even one of the approved fashions might be denial of salary increases and of the promotions leading to tenure but only if the teacher was incompetent. Petitioner was never advised by any responsible administrative officer of the University that he would not be rehired as a mathematics instructor if he failed to travel in Europe during his sabbatical summer. Petitioner was not required to travel in Europe or elsewhere during his sabbatical summer to retain his position. Petitioner's costs of travel in Europe during 1955 do not constitute ordinary and necessary business expenses and are not allowable as a deduction for the taxable year 1955. Opinion Assuming that "European travel" for a mathematics instructor is an appropriate or helpful method, without more, of carrying on his "study and research," petitioner has failed to carry his burden of demonstrating that *206 this was necessary to maintain his position at the university where he was then employed. There is some reason to accept his statement that failure to proceed with approved study and research might subject him to such "sanctions" as denial of promotion and salary increases, but the record is clear that had he engaged in none of the activities described as permissible for a sabbatical summer [1] he would still have been retained on the faculty as one of its most capable members. Mere failure otherwise to achieve a promotion or qualify for a better job, of course, does not justify a deduction. See Robert M. Kamins, 25 T.C. 1238 (1956); Knut F. Larson, 15 T.C. 956 (1950). *207 Foreign travel may be appropriate to increase the education and culture of any person, and to the extent that these qualities may contribute to the successful prosecution of any line of endeavor, they are not different from the basic education referred to in the frequently quoted passage from Welch v. Helvering, 290 U.S. 111, 115 (1933): Reputation and learning are akin to capital assets, like the good will of an old partnership. Cf. Colony Coal & Coke Corp. v. Commissioner, 52 F. 2d 923. For many, they are the only tools with which to hew a pathway to success. The money spent in acquiring them is well and wisely spent. It is not an ordinary expense of the operation of a business. We cannot find that to any greater extent petitioner's trip to Europe was appropriate or necessary for the retention of his position as a mathematics instructor. Parenthetically, it may be noted that plans had already been made for petitioner to return for only one more academic year before proceeding, with the approval of the chairman of his department, to engage in a 3-year course of mathematical research at another university. It would be most difficult to believe that *208 under such circumstances his tour of European museums, cathedrals, Catholic shrines and other places of interest to sightseers generally contributed in any material way to his continued tenure. Of course, we need not speculate on the possible consequences of a direct violation of the prohibition against engaging in "consulting work or other forms of employment." We are accordingly unable to conclude that the principal purpose of petitioner's European travel was either to meet any requirement of his employer for the continuation of the position petitioner occupied at that time or to maintain or improve "skills" [2] required by petitioner in that position. Manoel Cardozo, 17 T.C. 3 (1951); Richard Seibold, 31 T.C. 1017 (1959). *209 Decision will be entered for the respondent. Footnotes
1. "The teacher receives [under this plan] an increase in his present regular instructional salary of thirty-three and one-third per cent. "Under this plan the teacher is expected to teach two out of three summers, and must spend the other summer on leave in a year convenient to the University as determined by the Dean. "As the sabbatical summer is designed to make members of the faculty better teachers, it may be used only for travel, reading, resting, and self-improvement and not for consulting work or other forms of employment to augment their University salaries."↩
2. Sec. 1.162-5, Income Tax Regs. Expenses for Education. - (a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of: (1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business, or (2) Meeting the express requirements of a taxpayer's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the taxpayer of his salary, status or employment. [T.D. 6291, 1958-1 C.B. 63↩, 67.]