EDGAR S. BELAVAL, Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 12588.   Decided July 28, 1961.

*Elí Beléndez García* for appellant.   *J. B. Fernández Badillo, Secretary of Justice, Arturo Estrella, Assistant Secretary of Justice,* and *Luis F. Candal, Assistant Attorney General,* for appellee.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, and Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE BLANCO LUGO delivered the opinion of the Court.

The Regulations of the University of Puerto Rico [1] in force in 1952, which is the taxable year involved in the controversy in this action, provides that "Persons who in the discharge of full-time service hold fixed positions provided for in the budget and who, in the opinion of the proper academic authorities, have rendered satisfactory service for the number of years required by § 16 of Act No. 135 of May

---

[1] The Regulations referred to were adopted by the Superior Educational Council on June 23, 1950, pursuant to the provisions of §§ 11 and 14 of Act No. 135 of May 7, 1942 (Sess. Laws, p. 762, 18 L.P.R.A. §§ 642 and 645).

7, 1942 (Sess. Laws, p. 762) are eligible for appointment on tenure." [2]   Once permanency is acquired, a professor may not be removed without the preferment of charges and an opportunity for defense, *Rivera* v. *Chancellor of the University*, 73 P.R.R. 361 (1952), but in the professional order additional requisites are not inexorably necessary to preserve that status, such as pursuing studies leading to the obtainment of higher academic degrees.   The additional academic preparation is reflected on the salary to be earned, since in addition to the monthly basic salary provision is made for additional compensation for academic preparation. [3]

During the University session of 1951-52, the wife of Edgar S. Belaval, appellant herein, rendered services as professor at the University of Puerto Rico with the rank of permanent assistant professor, and received a salary of $3,780 annually plus additional compensation of $240, or a total of $4,020.   During the following year she worked under identical conditions, except that she received an annual increase of $60 in her salary in order to conform it to the

---

[2] The said § 16 (18 L.P.R.A. § 647) provides that the appointments shall have a permanent character after the expiration of five (5) years of regular and satisfactory services and appointment is issued for a sixth year.   See *Núñez* v. *Benítez, Chancellor*, 65 P.R.R. 812 (1946).

[3] Article 1 of Chapter IV of the said Regulations provides that:

"Article 1.—The salaries of instructors, assistant professors, associate professors, and professors shall be computed on the basis of a monthly minimum rate of $225, $265, $305, and $355, respectively, plus additional compensation which shall be computed in accordance with the following scale:

(a) For academic preparation:

$30 monthly for one or more years of University and postgraduate courses for which an accredited university shall have conferred a degree equal or equivalent to the Master's degree conferred by the best Universities.

$75 monthly for university courses higher than the Master's degree and for which an accredited university shall have conferred a degree equal or equivalent to a Doctor's degree conferred by the best Universities.

(b) For years of services to the University of Puerto Rico:

$15 monthly for five years or more,

$30 monthly for ten years or more, and

$45 monthly for fifteen years or more."

salary specified in the scale of salaries fixed in the Regulations of the University for assistant professors with "preparation equivalent to Master and services for 15 or more years." In 1954-55, her annual compensation was increased to $4,800 in consideration of exceptional services and of services additional to her purely teaching duties. This scale of salaries has been increased periodically by the Superior Educational Council in order to conform it to the realities of the purchasing power of money.

In the summer of 1952, Mrs. Belaval was granted a special leave of absence with pay [4] (June 9 to July 24), and a regular leave (July 25 to August 17). She was authorized to pursue studies in Kenyon School of Letters in the State of Indiana. As stipulated by the parties, "these studies were not pursued at the request of the University of Puerto Rico nor compelled by the latter and they did not entail an increase in salary, but were pursued for Mrs. Belaval's convenience and would ultimately redound to the benefit of the University of Puerto Rico because of the better academic preparation of the said professor," and *"nor were they required to enable her to continue in her position."* During her stay in that university Mrs. Belaval took two courses which were credited to her for a Doctor's degree.

The taxpayer deducted in his income-tax return for 1952, the sum of $530.20, as expenses incurred by his wife in the studies mentioned.[5] The main question for determination is

[4] Chapter VI of the Regulations provides for the granting of several kinds of leaves by the University Board: sabbatical, special, without pay, sick leaves, maternity, and regular leaves. Section 3, dealing with special leaves of absence, provides that "Leaves with pay, or financial aid, may be granted under special circumstances to members of the Service Exempt for the performance of special work or *to pursue studies* in or outside Puerto Rico." Section 7 provides that the members of the University personnel shall be entitled to the regular leaves of absence at the rate of 2½ days for each month of service.

[5] The expenses cover transportation, registration, books, stenographic services, and boarding. There is no question as to their verification or reasonability.

whether those expenses are "ordinary and necessary expenses" deductible under the provisions of § 16(a)(1) of the Income Tax Act of 1924 (13 L.P.R.A. § 695 (a)(1)).

From a study of American authorities on similar situations, and construing an identical legal provision, it may be affirmed in general terms that the expenses incurred by a teacher in the obtainment of a better preparation or a higher academic rank are deemed to be personal expenses and, therefore, not deductible as ordinary and necessary expenses. However, when this better preparation or higher academic rank is necessary to enable a teacher to maintain his professional employment or position, the expenses incurred in higher studies shall be considered ordinary and necessary expenses. As stated in *Hill* v. *Commissioner of Internal Revenue*, 181 F.2d 906 (C.A. 4, 1950), the expenses are deductible when they are incurred to maintain a position, not to attain a new position; to preserve the position, not to obtain an increase in salary; to carry on, not to commence in a new position. In that case it was held that the expenses were deductible because they were necessary to preserve the position which the taxpayer held as a public schoolteacher, because the law of the state required for the renewal of a teacher's certificate that she pursue certain studies during the summer, otherwise that she pass an examination. The same conclusion was reached in *Robert S. Green*, 28 T.C. 1154 (1957), in which it was necessary to obtain three credits in each five-year period in order to qualify for annual salary increments, or to maintain her position, even though the taxpayer had reached the maximum pay and the studies could incidentally be credited toward the attainment of a graduate degree. It was said that, in view of the attending circumstances, the studies were indispensable to enable the taxpayer *to maintain* her position as a schoolteacher. In *Marlor* v. *Commissioner*, 251 F.2d 615 (1958), reversing the Tax Court (27 T.C. 624 (1956)), it was held that the expenses

incurred in studies to retain a temporary position as a teacher were deductible. See, however, for a restrictive interpretation, *Richard Siebold,* 31 T.C. 1017 (1959). When the expenses are incurred in order to comply with a condition for the purpose of obtaining a position as professor or *to complete the education,* they are not deductible because they represent an investment of capital. Thus, in *Robert M. Kamins,* 25 T.C. 1238 (1956), there was rejected the deductibility of expenses for travel and typing a thesis in obtaining a doctorate degree incurred by the taxpayer in order to qualify for the *obtainment* of a position, for which it was necessary to complete substantially the studies for a doctorate degree. See *Matilda M. Brooks,* 30 T.C. 1087 (1958).

In brief, the expenses incurred in pursuing higher or additional studies are deductible when they are essential to the continuance of the employment or position as a teacher. *Noland* v. *Commissioner,* 269 F.2d 108, 111 (C.A. 4, 1959); 4 Mertens, Law of Federal Income Taxation 358–60, § 25.122; Johnson, *Deducting Summer School Expenses,* 29 Taxes 749. However, the expenses are not deductible when they are incurred to obtain a position, to attain a higher academic position, or a greater compensation within a scale of salaries, or to achieve personal aspirations of cultural improvement of the teacher.

■■ However, these reasonings of the American authorities have only a persuasive force for this Court. *Cía. Azucarera* v. *Tax Court,* 72 P.R.R. 850, 861 (1951); *Corretjer* v. *District Court,* 72 P.R.R. 704 (1951); *Castro* v. *González, Warden,* 70 P.R.R. 846 (1950). This means that we are at liberty to adopt a rule which would meet the situation and the needs of our medium. In this connection, we believe that the cultural advancement attained by teachers represents a benefit of incalculable value for our youth, and that no measure is sufficient to stimulate this intellectual growth. If this measure were placed in the balance of social and

economic conveniences, it would be preferable if the treasury would receive less income if the price to be paid is to allow the deductibility of the expenses—as ordinary and necessary expenses—incurred by a teacher who is anxious for professional advancement. These expenses have become practically indispensable in our professional world which is essentially characterized for the specialization, and also respond to the need of learning the technological advancements in arts and sciences. The state of the public education precisely has been and is a problem of great concern for the leaders of our people, and the criterion is unanimous that we should improve the quality of education.[6] Any stimulus to the teacher, however small, contributes in the last analysis to form better citizens. We therefore hold that legitimate expenses are those incurred by a teacher in maintaining and improving the ability or skill required in his or her ministry. It is clear that in this connection it must be shown that the studies pursued are those usually and ordinarily pursued by the members of that professional class, and that they *are not prompted solely* for the purpose of obtaining a better-paid position or the personal aspiration of cultural advancement of the teacher. There ought to be some relation between the studies pursued and the professional service of the teacher which may be translated into an actual benefit for the school population. In other words, we reject as sole criterion of deductibility of these expenses that the same be incurred for the purpose of maintaining an employment or position, and we extend it to other cases as already pointed out. Of course, each case must be examined individually in order to verify the particulars which we have pointed out, and also to

[6] Message on Education from the Governor of Puerto Rico to the Legislative Assembly of May 3, 1960 (Government Printing Press, 12 pp.). Reports of the Committee on Education of the House of Representatives on the State of the Educational System in Puerto Rico of the following dates: April 18, 1960, December 21, 1960, and December 30, 1960.

determine the reasonability of the expenses which may have been incurred.[7]

The position which we assume finds support in § 1.162-5 of the Federal Regulations (Federal Tax Regulations, 1961, p. 222), which were adopted on September 8, 1958. Perhaps it would be advisable, for purposes of greater clarity, to amend § 23(a)-5 of our Regulations (13 R.&R.P.R. § 3023 (a)-5)[8] in order to conform it to the present interpretation of the deductible character of educational expenses. *Cf. John S. Watson*, 31 T.C. 1014 (1959); *Coughlin v. Commissioner*, 203 F.2d 307 (C.A. 2, 1953). See *New Treasury Regulation Defines Deductibility of Education Costs as Trade or Business Expense*, 58 Colum.L.Rev. 1097 (1958); *Deductibility of Educational Expenses*, 6 Stan. L. Rev. 547 (1954); 52 Mich. L. Rev. 459 (1954); 7 Vand. L. Rev. 134 (1953).

From the facts stipulated by the parties it appears that the studies pursued by Mrs. Belaval "would redound to the benefit of the University of Puerto Rico because of the better academic preparation attained by her; that she was authorized by a special leave of absence to pursue those studies; and that they were not pursued for the purpose of obtaining an increase in salary, but to maintain her professional ability and increase her skill in teaching the subjects in her charge. Under these circumstances, the expenses incurred by her are deductible as necessary and ordinary expenses of her profession.

The judgment entered by the Superior Court, San Juan Part, on June 20, 1958, will be reversed.

---

[7] In this connection, it is well to point out that, in the final determination of the amount to be allowed as a deduction, an estimate should be made of the expenses which the taxpayer would have incurred if she had not pursued the studies and reduce her total amount of expenses.

[8] The said section of our Regulations is a translation of § 39.23(a)-5 of the Federal Regulations of 1954 (Federal Tax Regulations, 1954, p. 104).