HARRY H. AND GLORIA J. TAKAHASHI, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 10640-83.        Filed July 21, 1986.

---

*Terence Nunan* and *Jeffrey K. Riffer*, for the petitioners.
*Marilyn Devin* and *J. Robert Cuatto*, for the respondent.

NIMS, *Judge*: Respondent determined deficiencies in and additions to petitioners' Federal income taxes as follows:

| Year | Deficiency | Additions to tax sec. 6653(a)[1] |
|------|-----------|--------------------|
| 1979 | $1,536 | - - - |
| 1980 | 1,389 | $69.45 |
| 1981 | 2,686 | 134.30 |

After concessions, the issues for decision are: (1) Whether petitioners are entitled to deduct certain expenses which they incurred to attend a seminar in Hawaii as education expenses under section 162(a); (2) whether the operation of petitioner's farm was an activity "not engaged in for profit" within the meaning of section 183; and (3) whether petitioners are liable for additions to tax for negligence or intentional disregard of rules and regulations under section 6653(a). For reasons of convenience, we have combined our findings of fact and opinion with respect to each issue.

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners Harry H. Takahashi and Gloria J. Takahashi husband and wife, resided in Hacienda Heights, California, at the time they filed the petition herein.

---

[1]Unless otherwise indicated, all section references are to sections of the Internal Revenue Code of 1954 in effect for the years in question. All Rule references are to the Tax Court Rules of Practice and Procedure.

### Issue 1. Education Expenses

During the years in issue, petitioners were employed as science teachers by the Los Angeles Unified School District. Approximately 25 percent of Mrs. Takahashi's students were minorities while almost all of Mr. Takahashi's students were minorities. Most of the minority students taught by petitioners were Hispanic.

Pursuant to article 3.3 of the California State Education Code, a teacher employed by the Los Angeles Unified School District must complete a minimum of two semester units in a course of study dealing with multicultural societies to receive promotions and salary increases. During 1981, petitioners attended a seminar held in Hawaii entitled "The Hawaiian Cultural Transition in a Diverse Society" which satisfied the requirements of article 3.3.

Petitioners, together with their 2 1/2-year-old son, spent 10 days in Hawaii. Petitioners attended the seminar on 9 out of the 10 days during which they were in Hawaii. The seminar program lasted from 1 to 6 hours each day and consisted of classroom instruction as well as tours of Polynesian cultural attractions and visits to the homes of local natives. When petitioners were not participating in the seminar they would take their son sightseeing or spend time relaxing at the beach.

Petitioners incurred expenses totaling $2,373 in connection with their trip to Hawaii. A portion of these expenses were incurred for their son's travel and meals as well as for personal activities engaged in by petitioners which were unrelated to the seminar.

On Form 2106 (Employee Business Expenses) attached to their 1981 Form 1040, petitioners claimed the expenses they incurred in connection with their Hawaiian trip as an education expense under section 162(a). In the notice of deficiency, respondent disallowed this deduction in full with the explanation that petitioners had not established that the expenses were paid or incurred during the taxable year or that the expenses were ordinary and necessary to their business.

Under section 1.162-5(a), Income Tax Regs., education expenses are deductible as ordinary and necessary business

expenses if the education (1) maintains or improves skills required by the individual in his employment or other trade or business, or (2) meets the express requirements of the individual's employer. If a taxpayer incurs education expenses while traveling away from home which satisfy one or both of these tests, his expenditures for travel, meals, and lodging incurred while away from home are deductible only if the individual travels away from home primarily to obtain education. Sec. 1.162-5(e)(1), Income Tax Regs. If the taxpayer travels away from home primarily for personal reasons, only expenditures incurred for meals and lodging during the time actually spent participating in deductible education pursuits are allowable. Sec. 1.162-5(e)(1), Income Tax Regs.

Petitioners do not contend nor does the record contain any evidence that petitioners' attendance at the seminar was required by their employer.[2] Rather, petitioners contend that because the seminar on "Hawaiian Cultural Transition in a Diverse Society" enabled them to better understand their minority students, the seminar maintained or improved skills required by them to teach science to minority students. Petitioners further contend that they traveled to Hawaii primarily to attend the seminar. Petitioners therefore conclude that the expenses they incurred in connection with the seminar, including travel, meals, and lodging, are fully deductible as education expenses under section 162(a).

Respondent contends that petitioners have not established that the seminar maintained or improved skills required by them to perform their jobs as science teachers, and, therefore, that none of the expenses petitioners incurred in connection with their trip to Hawaii are deductible. Respondent further contends that even if the seminar maintained or improved petitioners' teaching skills, petitioners' education expense deduction should not be allowed because petitioners traveled to Hawaii primarily for a

[2]Sec. 1.162-5(c)(2), Income Tax Regs., provides in pertinent part that "Only the minimum education necessary to the retention by the individual of his established employment relationship, status, or rate of compensation may be considered as undertaken to meet the express requirements of the taxpayer's employer." The seminar attended by petitioners satisfied the requirements of art. 3.3 of the California State Education Code and therefore made petitioners eligible for promotions and salary increases. Petitioners' participation in this seminar in no way affected the retention of their current employment relationship, status, or rate of compensation.

vacation rather than to obtain education. Finally, respondent contends that even if petitioners traveled to Hawaii primarily to obtain education, they have provided no records or credible testimony upon which to allocate the cost of their Hawaiian trip between deductible business expenses and nondeductible personal expenses.

On the record before us, we do not think that petitioners' participation in the seminar maintained or improved skills required by them to perform their jobs as science teachers, and petitioners have conceded that their attendance was not required by their employer. Consequently, since petitioners fail to satisfy the threshold tests of section 1.162-5(a) of the regulations, we need not consider whether petitioners have satisfied the travel provisions of section 1.162-5(e) of the regulations.

When a taxpayer claims, pursuant to the first of the tests contained in section 1.162-5(a) of the regulations, that an education expense was incurred in order to maintain or improve his existing skills, he must demonstrate a connection between the course of the study and his particular job skills. *Schwartz v. Commissioner*, 69 T.C. 877, 889 (1978), citing *Baker v. Commissioner*, 51 T.C. 243 (1968). We do not think petitioners have demonstrated this connection. Although Mrs. Takahashi cited "greater rapport" and "better understanding of people," she could point to "no real tangible thing" to connect the Hawaiian multicultural course which she took with the skills required of a science teacher. Similarly, with respect to Mr. Takahashi, the record shows no evidence that the course which he attended in Hawaii had any nexus with his teaching of science. Mr. Takahashi did not testify at the trial.

Petitioners cite *Hilt v. Commissioner*, T.C. Memo. 1981-672, as illustrating a situation where the education-travel deduction was disallowed only because the taxpayers "did not engage in any specific course of study or spend any time acquiring information from individuals specifically knowledgeable in the areas of Hawaiian culture or history." 42 T.C.M. 1718, at 1721-1722, 50 P-H Memo T.C. par. 81,672, at 81-2613. As in the case before us, *Hilt* involved California teachers who traveled to Hawaii with a child and claimed section 162(a) education expense deductions. The

deductions claimed in *Hilt* were based in some part at least upon taxpayers' obtaining "professional growth units" under California law which, when obtained, would have increased taxpayers' salary levels.[3]

Petitioners apparently wish us to infer from the above-quoted language in *Hilt* that any expenditures incurred for general cultural enrichment, if duly substantiated, will be allowable as education expense deductions. However, in the context of petitioners' professional duties as science teachers, the Hawaiian Cultural Transition course does not in our judgment fall within the category of a "refresher," "current developments," or "academic or vocational" course required by the regulations. Sec. 1.162-5(c)(1), Income Tax Regs. The Hawaiian Cultural Transition course is simply not sufficiently germane to the teaching of science to bring the course within the category of expenditures for education which maintains or improves skills required by the individual in his employment. Sec. 1.162-5(a)(1), Income Tax Regs. We accordingly hold for respondent on this issue.

## Issue 2. Farm Losses

On their Federal income tax returns for the years in issue, petitioners claimed losses from the operation of a 40-acre grape farm (the farm) which Mrs. Takahashi (petitioner) owned in Fresno County, California. The farm had originally been owned by petitioner's grandfather and had been petitioner's family home during her childhood. Petitioner had purchased the farm in January 1972, from her uncle for approximately $120,000, the consideration consisting of a cash downpayment and an interest-bearing note.

At the time petitioner purchased the farm, her father was farming the property. In order to provide her father with steady employment and old-age security, petitioner and her father entered into an oral agreement whereby her father would operate, manage, and work the farm in exchange for net profits, if any. Petitioner's father agreed to pay all expenses which were incurred for labor, transportation, and equipment while petitioner agreed to pay all other expenses

---

[3]Mrs. Takahashi testified as to her belief that her husband did, in fact, receive a raise as a result of his art. 3.3 credits. As for herself, there was no advancement possible since she was already "at the end of the salary scale."

which were incurred in connection with the operation of the farm. Pursuant to this agreement, petitioner would receive farm income to the extent of the farm expenses which she incurred during the year, while her father would receive any remaining income. They further agreed, however, that regardless of the profitability of the farm, petitioner's father would receive income sufficient to support himself and his wife. In the event the farm operations resulted in a net loss, all losses would be allocated to petitioner.

On Schedule F (Farm Income and Expenses) attached to their Forms 1040 for 1979, 1980, and 1981, petitioners reported the following income, expenses, and losses with respect to the operation of the farm:

|  | 1979 | 1980 | 1981 |
|---|---|---|---|
| Income | $10,000 | $10,000 | $10,000 |
| Expenses | 14,494 | 14,281 | 12,048 |
| Profit (loss) | (4,494) | (4,281) | (2,048) |

In the notice of deficiency, respondent determined that petitioner's farming activities were "not engaged in for profit" within the meaning of section 183 and, therefore, he disallowed all farm expenses in excess of farm income. The issue we must decide is whether petitioner engaged in the operation of the farm for profit.[4] It seems self-evident that she did not, since under the agreement with her father, any net profit would have inured to him.

A taxpayer must engage in an activity with the primary purpose and objective of making a profit in order to fully deduct expenses under either section 162 or section 212. *Golanty v. Commissioner*, 72 T.C. 411, 425 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). "While a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide." *Fox v. Commissioner*, 80 T.C. 972, 1006 (1983), affd. without published opinion 742 F.2d 1441 (2d Cir. 1984), affd. without published opinion sub nom. *Hook v. Commissioner*,

[4]In an amended answer filed on Aug. 27, 1985, respondent alternatively alleged that: (1) Gloria and her father operated the farm as a partnership; (2) during the years in issue, Gloria reported a loss in connection with the partnership's farming activities while her father reported income from the partnership's farming activities; (3) the allocation of farm losses to Gloria and farm income to her father constitutes an improper special allocation under sec. 704(b); and (4) therefore, Gloria is not entitled to claim the partnership losses during the years in issue. On brief, respondent informed the Court that he had decided to abandon this argument.

*Kratsa v. Commissioner, Leffel v. Commissioner, Rosenblatt v. Commissioner*, Zemel v. Commissioner, 734 F.2d 5-7, 9 (3d Cir. 1984), affd. sub nom. *Barnard v. Commissioner*, 731 F.2d 230 (4th Cir. 1984); *Dreicer v. Commissioner*, 78 T.C. 642, 644-645 (1982), affd. without opinion (D.C. Cir. 1983).

The issue of whether a taxpayer engaged in an activity with the requisite objective of making a profit is one of fact to be resolved on the basis of all the facts and circumstances. *Lemmen v. Commissioner*, 77 T.C. 1326, 1340 (1981). The burden of proving the requisite intention is on petitioners. *Sabelis v. Commissioner*, 37 T.C. 1058, 1062 (1962); Rule 142(a).

Section 183 allows deductions for ordinary and necessary expenses arising from an activity not engaged in for profit only to the extent of gross income derived from such activity, less the amount of those deductions which are allowable regardless of whether or not the activity is engaged in for profit.[5]

By letter dated June 24, 1982, petitioner informed an agent for the Internal Revenue Service that her objective with respect to the operation of the farm was as follows:

My share of the income? I receive only what is needed to meet my financial obligations. My intent is not to make money but to have a tax

---

[5]Sec. 183 reads, in relevant part, as follows:

SEC. 183(a). GENERAL RULE.—In the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section.

(b) DEDUCTIONS ALLOWABLE.—In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed—

(1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and

(2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1).

(c) ACTIVITY NOT ENGAGED IN FOR PROFIT DEFINED.—For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212.

(d) PRESUMPTION.—If the gross income derived from an activity for 2 or more of the taxable years in the period of 5 consecutive taxable years which ends with the taxable year exceeds the deductions attributable to such activity (determined without regard to whether or not such activity is engaged in for profit), then, unless the Secretary establishes to the contrary, such activity shall be presumed for purposes of this chapter for such taxable year to be an activity engaged in for profit. In the case of an activity which consists in major part of the breeding, training, showing, or racing of horses, the preceding sentence shall be applied by substituting the period of 7 consecutive taxable years for the period of 5 consecutive taxable years.

shelter and mostly to help my folks, whose income is solely from this small farm. The costs of operating a raisin farm ha[ve] increased steadily if not rapidly these years, perhaps more significantly with small farms such as this one (40 acres), however the income has fluctuated and continues to do so. Their income is adversely affected by many negative environmental factors, increasing inflation and a declining economy. Since I have a set income, and they have difficult times (i.e. inopportune excessive rain, frost, hail, mold & insect damage, etc.) I ask them only for the amount needed to pay my financial obligations as previously mentioned. In 1978, less money was requested due to severe crop damage from hail.

Petitioner testified at trial and did not dispute the authenticity of this letter. We therefore find this letter, standing alone, to be an admission by petitioner that she engaged in the operation of the farm primarily to provide her parents with a steady income and to obtain tax deductions rather than to make an economic profit. We also emphasize that petitioners state in their brief that petitioner's "primary motive was to provide a farm for her father and mother to enable them to become self-sufficient."

The terms of the oral agreement between petitioner and her father confirm petitioner's admission that she did not engage in the operation of her farm with the primary objective of making a profit. Pursuant to this agreement, petitioner was to receive farm income only to the extent of her farm expenses. Thus, regardless of the farm's profitability, petitioner would never realize a profit from the farm's operation. We also observe that during the years in issue, even though the farm produced sufficient income to cover petitioner's share of the farm expenses, she did not even receive all of the income to which she was entitled, but rather ceded some of her share to her father.

Petitioners argue that the farm was operated in a businesslike manner, that the farm was not used for personal pleasure or recreation, and that the farm losses were attributable to factors beyond petitioner's control. While under the regulations these are relevant factors to be considered in determining profit motive, they are rendered immaterial in this case in light of petitioner's admission that she did not have a profit objective. See sec. 1.183-2(b), Income Tax Regs. (some of the relevant factors listed which

are to be considered in determining whether an activity is engaged in for profit).

*Frazier v. Commissioner*, T.C. Memo. 1985-61, does not require a different result. There, although the taxpayer's mother resided on the farm, the taxpayer, himself, nevertheless had a profit objective in operating the farm, which is not the case here.

There remains the question of interest and property taxes on the farm, allegedly paid by petitioners, which if substantiated would be deductible personal expenses even if petitioner's farm activity were not engaged in for profit. Sec. 183(b)(1). Respondent at trial challenged these deductions based on lack of substantiation. The expenses in question were not disallowed in the deficiency notice and disallowance has not been affirmatively pleaded by respondent in his answer or by an amended answer. Interest and property taxes on the farm will therefore be allowed to the extent claimed on petitioners' returns.

The deficiency notice determines an addition to tax for negligence under section 6653(a). Respondent has not pursued the matter in this proceeding and we presume that it has been abandoned. The additions to tax for negligence will not be imposed.

To reflect the foregoing,

*Decision will be entered under Rule 155.*