T.C. Memo. 2000-138

UNITED STATES TAX COURT

ANN JORGENSEN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19001-98.                    Filed April 13, 2000.

Ann Jorgensen, pro se.

Wendy Abkin, for respondent.

MEMORANDUM OPINION

DEAN, Special Trial Judge:  Respondent determined
deficiencies in petitioner's Federal income taxes of $1,596 and
$2,282 for taxable years 1995 and 1996, respectively.

The issue for decision is whether petitioner incurred
nondeductible expenses for travel as a form of education within

the meaning of section 274(m)(2) or whether she had ordinary and necessary employee business expenses for travel and education under section 162.[1]

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by reference. Petitioner resided in San Francisco, California, at the time she filed her petition.

## Background

Petitioner teaches English at Abraham Lincoln High School, a culturally diverse San Francisco public high school with a predominantly Asian student population. During 1995 and 1996, petitioner also was the chair of the high school's English department. Most of petitioner's students are immigrants or have parents who are immigrants.

As a teacher in the San Francisco Unified School District, petitioner has a mission to promote both intellectual growth and cultural and linguistic sensitivity to enable students from all cultural backgrounds to succeed. Petitioner's duties as a teacher include, among others, to be competent in her subject field, to be involved in the development and implementation of curriculum, to demonstrate a repertoire of teaching strategies

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

and techniques, and to participate in professional growth activities. Some of petitioner's additional duties and responsibilities as English department chair were to assist in establishing department curriculum objectives and develop a plan for the implementation and evaluation of these objectives, to develop innovative or experimental work and articulate instruction with various grade levels, to assist department teachers with day-to-day problems of instruction, to act as a resource person for department teachers on curriculum questions, and to be able to relate successfully with diverse groups of students and adults.

In 1995 petitioner enrolled in a summer course sponsored by the University of California, Berkeley Extension Program (U.C. Extension) entitled "Legendary Greece: Minoans, Mycenaeans, and Classical Athens" (Legendary Greece) in order to study how legend grew out of historical events. The course took place in Greece from June 20 to July 8, 1995. Petitioner paid the following amounts for the Legendary Greece course and deducted the total amount on her 1995 Federal income tax return as an employee business expense:

```
U.C. Extension:
  Tuition, lodging, meals                      $4,140
Airfare                                         1,117
Miscellaneous:
 Two extra nights at hotel        $240
 Books and airport shuttle          77            317

    Total                                        5,574
```

In 1996, petitioner attended a U.C. Extension course entitled "Southeast Asia: Sacred Places" (Southeast Asia) to study how the religious traditions of Buddhism and Hinduism have shaped and continue to shape the culture of Southeast Asia. The course took place in Thailand, Cambodia, and Indonesia from December 27, 1996, to January 11, 1997. Petitioner paid the following amounts in connection with the Southeast Asia course and deducted the total amount on her 1996 Federal income tax return as an employee business expense:

| U.C. Extension: | |
|---|---|
| Tuition, meals, lodging | $4,500 |
| Airfare | 2,235 |
| Visas, transfers, taxes, misc. | 1,070 |
| Total | 7,805 |

Both of these courses were taught by university professors and qualified for upper division, undergraduate U.C. Extension credit. In both courses, credit requirements included the completion of a research paper. Petitioner did not seek or obtain credit for the courses.

Both courses had focused academic purposes and consisted of a series of formal lectures and visits to historical and cultural sites. The Legendary Greece course had a required reading list for all attendees, and the Southeast Asia course required reading only for attendees seeking credit. Petitioner completed all credit requirements for the courses with the exception of the research papers. Petitioner's employer did not require her to

take these courses as a condition to retaining her employment as a high school English teacher.

Petitioner has applied what she learned in the Legendary Greece course to develop additional curriculum for her English classes. This curriculum includes the study of methods Homer used to "compose" the "Odyssey" and of the historical Mycenaean palace culture, in which ancient Greek tragedies were set. In addition, petitioner has added a "strand" explaining the historical and cultural roots of certain myths and legends.

Petitioner has applied what she learned in the Southeast Asia course to understand better her Asian students' responses in class and to work more effectively with them. Petitioner's experiences in Asia serve as a basis for further intelligent and respectful discussion with her students about their cultures. Petitioner also has used the knowledge she gained in the Southeast Asia course to enhance her curriculum: Introducing works written by Americans of Southeast Asian origin, discussing novels with an Asian immigrant theme, and working to bring the Indian epic "Ramayana" into her high school's world literature curriculum.

In the notice of deficiency, respondent disallowed $5,676 and $8,125 of the deductions petitioner claimed as employee business expenses on her Federal income tax returns for taxable years 1995 and 1996, respectively. Respondent concedes that

petitioner is entitled to $103 of the disallowed deductions for 1995 and $320 of the disallowed deductions for 1996. The remaining disallowed deductions are for the expenditures associated with petitioner's participation in the Legendary Greece and Southeast Asia courses. Respondent maintains that these expenses were incurred for travel as a form of education and that such expenses are nondeductible under section 274(m)(2). In the alternative, respondent argues that even if the expenses are for education other than that which resulted from the travel itself, the expenses are nevertheless not deductible under section 162 because they are not ordinary and necessary business expenses.

## Discussion

Section 162(a) permits a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Such expenses generally include expenditures for travel, including amounts expended on meals and lodging, while away from home in the pursuit of a trade or business. See sec. 162(a)(2).

In contrast, no deductions are allowed for personal, living, or family expenses unless otherwise expressly provided by the Internal Revenue Code. See sec. 262(a). Expenditures made by a taxpayer in obtaining or furthering education are considered personal expenses and are not deductible unless they qualify

under section 162 and section 1.162-5, Income Tax Regs., as business expenses.  See sec. 1.262-1(b)(9), Income Tax Regs. Objective criteria for distinguishing between business expenses and personal expenses are set forth in section 1.162-5, Income Tax Regs.  See Boser v. Commissioner, 77 T.C. 1124, 1128-1129 (1981), revised 79 T.C. II (1982), affd. without published opinion (9th Cir., Dec. 22, 1983); McCulloch v. Commissioner, T.C. Memo. 1988-84.

Before 1987, section 1.162-5(d), Income Tax Regs., specifically provided that expenditures for travel as a form of education could properly be deducted under section 162 to the extent the travel was directly related to the duties of the individual in his or her employment or other trade or business. This regulation, however, was expressly overruled for years beginning after 1986 by the enactment of section 274(m)(2).  See Tax Reform Act of 1986, Pub. L. 99-514, sec. 142(b), 100 Stat. 2118.  Section 274(m)(2) provides that "No deduction shall be allowed under this chapter for expenses for travel as a form of education."

Although no regulations have yet been promulgated under section 274(m), its legislative history offers insight into congressional intent in enacting section 274(m)(2).  In H. Conf. Rept. 99-841 (Vol. 2), at II-30 (1986), 1986-3 C.B. (Vol. 4) 1, 30, the legislation was explained as follows:

    <u>Educational travel</u>.--No deduction is allowed for costs of travel that would be deductible only on the ground that the travel itself constitutes a form of education (e.g, where a teacher of French travels to France to maintain general familiarity with the French language and culture, or where a social studies teacher travels to another State to learn about or photograph its people, customs, geography, etc.). This provision overrules Treas. Reg. sec. 1.162-5(d) to the extent that such regulation allows deductions for travel as a form of education.

While the statute expressly overrules section 1.162-5(d), Income Tax Regs., the report makes no mention of section 1.162-5(e), Income Tax Regs., which provides, in part, for the deductibility of a taxpayer's travel expenses if the primary purpose of the travel is to engage in activities that themselves represent deductible education expenses. A report from the House of Representatives Committee on Ways and Means provides additional insight into the rationale underlying section 274(m)(2) and further indicates that Congress intended to leave intact the provisions for deductibility under section 1.162-5(e), Income Tax Regs.:

    The committee is concerned about deductions claimed for travel as a form of "education". The committee believes that any business purpose served by traveling for general educational purposes, in the absence of a specific need such as engaging in research which can only be performed at a particular facility, is at most indirect and insubstantial. By contrast, travel as a form of education may provide substantial personal benefits by permitting some individuals in particular professions to deduct the cost of a vacation, while most individuals must pay for vacation trips out of after-tax dollars, no matter how educationally stimulating the travel may be. Accordingly, the committee bill disallows deductions for travel that can

be claimed only on the ground that the travel itself is "educational", but permits deductions for travel that is a necessary adjunct to engaging in an activity that gives rise to a business deduction relating to education.  [H.Rept. 99-426, at 122 (1985), 1986-3 C.B. (Vol. 2) 1, 122.]

Petitioner argues that her travel was not travel as a form of education within the meaning of section 274(m)(2) because she traveled to participate in academic courses, and thus, the travel was "a necessary adjunct to engaging in an activity that gives rise to a business deduction relating to education."  Respondent, on the other hand, contends that petitioner's travel does not differ materially from any organized group tour with a knowledgeable group leader.  We agree with petitioner that the U.C. Extension courses fall outside the scope of section 274(m)(2).

Both of the courses had focused educational purposes beyond mere travel as evidenced by the fact that university credit was available for the courses.  Unlike the example of a French teacher improving her familiarity with the French language and culture simply through traveling in France, the U.C. Extension courses were conducted on an organized basis with regular lectures from university professors and planned tours of historically and culturally significant sites directly related to the course of study.  Petitioner's participation in the courses involved following structured syllabi and completing significant reading assignments.  Both U.C. Extension courses and instructors

who teach them are reviewed and approved by the appropriate academic department on the University of California, Berkeley campus, and the Committee on Courses of the Academic Senate. Although petitioner did not complete the credit requirements, we are satisfied that her participation in the courses was not within the ambit of section 274(m)(2).

Having determined that the U.C. Extension courses were educational activities beyond mere travel, we nevertheless must determine whether petitioner's expenses meet the requirements for deductibility under section 162. Expenditures made by a taxpayer for education are deductible, with certain exceptions not relevant here,[2] if the education either: (1) Maintains or improves skills required in an individual's employment or other trade or business; or (2) meets the express requirements of the individual's employer, or meets the requirements of applicable law or regulations, imposed as a condition to the retention of employment, status, or rate of compensation. See sec. 1.162-5(a), Income Tax Regs. Petitioner's employer did not expressly

---

[2] The parties agree that the U.C. Extension courses do not meet the minimum educational requirements of petitioner's employment. They further agree that the courses do not qualify petitioner for a new trade or business. Thus, deductions associated with the courses are not prohibited under sec. 1.162-5(b), Income Tax Regs.

require her to take the courses at issue. We therefore assess whether these course maintained or improved petitioner's skills as a high school English teacher.

Whether education maintains or improves skills required by the taxpayer's employment is a question of fact. See Boser v. Commissioner, 77 T.C. at 1131; Schwartz v. Commissioner, 69 T.C. 877, 889 (1978); Baker v. Commissioner, 51 T.C. 243, 247 (1968). The burden of proof is on the taxpayer. See Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933); Boser v. Commissioner, supra at 1131; cf. sec. 7491.[3] The fact that petitioner's education is helpful to her in the performance of her employment does not establish that its cost is deductible as a business expense. See Carroll v. Commissioner, 51 T.C. 213, 215 (1968), affd. 418 F.2d 91 (7th Cir. 1969). Petitioner must establish that there is a direct and proximate relationship between the U.C. Extension courses and the skills required in her employment as a high school English teacher. See Kornhauser v. United States, 276 U.S. 145, 153 (1928); Boser v. Commissioner, supra at 1131. A precise correlation is not necessary, but the expenditure must

---

[3] Sec. 7491, as effective for court proceedings arising in connection with examinations commencing after July 22, 1998, shifts the burden of proof to the Commissioner, subject to certain limitations, where a taxpayer introduces credible evidence with respect to factual issues relevant to ascertaining the taxpayer's liability for tax. Petitioner does not contend that her examination commenced after July 22, 1998, or that sec. 7491 is applicable to her.

enhance existing employment skills.  See <u>Boser v. Commissioner</u>, <u>supra</u>.

We believe that petitioner's participation in the U.C. Extension courses improved her teaching skills in a direct and proximate manner.  Petitioner is able to provide specific examples of how her teaching skills were enhanced by both courses.

Petitioner's duties as an English teacher and as chair of the English department entailed more than simply providing instruction in English reading and writing skills.  The mission of the San Francisco Unified School District (school district) is in part "to provide each student with an equal opportunity to succeed by promoting intellectual growth, creativity, self discipline, [and] cultural and linguistic sensitivity".  In promoting this mission, petitioner's duties and responsibilities as a teacher required her to be competent in her subject field, to be involved in the development and implementation of curriculum, and to demonstrate a repertoire of teaching strategies and techniques.  A 1998 resolution of the school district provides in part that the English/language arts curriculum of the school district must "reflect the diversity of culture, race, and class of the students of the San Francisco Unified School District", and the required reading in high schools shall include those works of literature which are

referenced on college entrance examinations. Petitioner testified that as an English teacher, she spends 9 to 12 weeks out of a 36-week school year teaching Greek mythology to ninth graders and that she teaches a minimum of 6 weeks of Greek drama to students in the 12th grade. Petitioner did not provide any materials as evidence of the specific content of English courses at Abraham Lincoln High School, nor did she explain why her ninth grade English class includes the study of mythology. Petitioner's testimony, however, explaining why she chose to enroll in the Legendary Greece course, illuminates the need to teach mythology as part of an English class. Petitioner testified that as an undergraduate English major, she took a course in mythology so that she could become familiar with Greek myths and understand the mythical allusions prevalent in literature, but she further explained that the course neglected to relate the mythology to the culture or the civilization in Greece. Turning to the study of Greek drama, we understand such material to be among the great works of Western literature and a fundamental component in the study of world literature. On these bases and with our observations of petitioner, we find petitioner's testimony regarding the curriculum of her English classes credible.

As a result of the Legendary Greece course, petitioner now is able to explain the historical and cultural roots of certain myths and legends which helps her to capture her students' interest and impart greater understanding of the literature her students read for class. The Legendary Greece course also helped petitioner develop additional curriculum for her English classes, including study of the methods Homer used to "compose" the "Odyssey" and study of the historical Mycenaean palace culture, in which ancient Greek tragedies were set.

With regard to the Southeast Asia course, petitioner testified that she is now able to understand better her students from Southeast Asian countries and modify her teaching approaches appropriately. Her understanding also helps petitioner introduce literature written by Southeast Asian writers and enables her to help students understand the themes. Petitioner is also seeking to make the "Ramayana", an ancient Indian epic poem pervasive in Southeast Asia that she discovered through the course, part of the world literature curriculum at her high school.

In contrast to the situation in Takahashi v. Commissioner, 87 T.C. 126 (1986), in which we found that the taxpayers failed to demonstrate a connection between their attendance at a seminar in Hawaii on "Hawaiian Cultural Transition in a Diverse Society" and their jobs as science teachers, petitioner is able to point to tangible ways in which the Southeast Asia course improved her

teaching skills. Petitioner testified that, before taking the course, she sometimes had difficulty determining when an Asian student's response to a piece of literature signified a problem with reading comprehension or was a cultural response to a theme the student had difficulty understanding. Petitioner testified that the course has improved her ability to assess students' responses and help them understand themes in literature. Petitioner's study in Southeast Asia enhanced her skills beyond merely helping her to increase rapport with her Asian students. See Dollins v. Commissioner, T.C. Memo. 1982-394. But see Gino v. Commissioner, 60 T.C. 304, 310-311 (1973), revd. on other issue 538 F.2d 833 (9th Cir. 1976). Petitioner has incorporated much of the knowledge she gained and many of the skills she acquired in the Southeast Asia course into her English classes. See Dollins v. Commissioner, supra.

Respondent acknowledges that petitioner's participation in the U.C. Extension courses has improved her skills by helping her relate to her students and develop curriculum for both her classes and the English department, but respondent maintains that petitioner's skills improved as a result of her travel and not as a result of the courses. Although petitioner was required to travel to participate in the courses, it was the content of the courses that directed petitioner's attention to materials that enhanced her teaching. Through the course lectures and readings,

petitioner was able to gain more from her travel experience. In light of the classes petitioner taught, her role in developing curriculum for the English department, the racial and cultural background of many of her students, and petitioner's incorporation of tangible knowledge and skills learned in the U.C. Extension courses into the classes she teaches, we find the courses had a direct and proximate relationship in maintaining and improving petitioner's skills as a high school English teacher and as chair of the English department.

In addition to proving that the U.C. Extension courses maintained or improved her teaching skills, petitioners must prove that such expenses were "ordinary and necessary" within the meaning of section 162(a). See Boser v. Commissioner, 77 T.C. at 1132; Ford v. Commissioner, 56 T.C. 1300, 1305-1307 (1971), affd. per curiam 487 F.2d 1025 (9th Cir. 1973); Stricker v. Commissioner, T.C. Memo. 1995-530; McCulloch v. Commissioner, T.C. Memo. 1988-84; Raines v. Commissioner, T.C. Memo. 1983-125; sec. 1.262-1(b)(9), Income Tax Regs.

"Ordinary" has been defined in the context of section 162(a) as that which is "normal, usual, or customary" in the taxpayer's trade or business. Deputy v. du Pont, 308 U.S. 488, 495 (1940). The activity which gives rise to the expense must not be one that is rare in the taxpayer's business. See Welch v. Helvering, 290 U.S. at 114; Stricker v. Commissioner, supra. An activity that

is not required by the taxpayer's employer may still be ordinary. See Boser v. Commissioner, supra at 1132; Carlucci v. Commissioner, 37 T.C. 695 (1962).

Respondent acknowledges that it is a customary practice of teachers to travel for the sake of professional development, but respondent argues that petitioner has not established that it is normal, usual, or customary for teachers to take U.C. Extension courses involving travel to foreign countries for professional development.  It is not necessary that petitioner establish that teachers customarily enroll in U.C. Extension courses.  See Hill v. Commissioner, 181 F.2d 906, 908 (4th Cir. 1950), revg. 13 T.C. 291 (1949).  In Hill, the Court of Appeals for the Fourth Circuit found that it was unreasonable to require the taxpayer to show that the course she pursued in obtaining further education was the usual method followed by teachers in obtaining renewal of their teaching certificates.  See id.  The court found it sufficient to establish that an expense is ordinary if the "particular course adopted by the taxpayer is a response that a reasonable person would normally and naturally make under the specific circumstances".  Id.; see also Sanders v. Commissioner, T.C. Memo. 1960-61.

Petitioner is expected, as a teacher in the San Francisco Unified School District, to pursue a program of professional growth.  One of the accepted means of pursuing such a program is

to complete college or university courses.  Petitioner enrolled in the U.C. Extension courses with specific educational objectives.  She testified that she has not seen classes available elsewhere offering similar courses of study.  As evidenced by several Tax Court cases involving teachers enrolling in university courses and studying abroad in order to improve teaching skills, such an expenditure is "normal" for a high school teacher.  See, e.g., Ford v. Commissioner, supra; Weiman v. Commissioner, T.C. Memo. 1971-92.  Professional educators act on the assumption that further education improves their ability to use their knowledge effectively.  See Ford v. Commissioner, supra at 1306.  Under the particular facts of this case, petitioner's participation in the U.C. Extension courses resulted in ordinary business expenditures.

"Necessary" has been construed to mean "appropriate" or "helpful", not "indispensable" or "required".  Id. at 1305-1307. If there are "reasonably evident business ends to be served, and the intention to serve them appears adequately from the record", expenses satisfy the "necessary" requirement.  Manischewitz Co. v. Commissioner, 10 T.C. 1139, 1145 (1948).  As discussed, the U.C. Extension courses improved petitioner's teaching skills. The expenses associated with a teacher's pursuing further education that develops her understanding of topics which are part of the curriculum she teaches in her classroom, helps her

incorporate new materials into her curriculum, and increases her ability to reach out to her students are "appropriate" and "helpful" for a high school teacher.

Inherent in the concept of necessary, however, is that an expenditure must be reasonable in relation to its purpose.  See Boser v. Commissioner, supra at 1133; Stricker v. Commissioner, supra; McCulloch v. Commissioner, supra.  To the extent that an expense is unreasonable, it is not necessary.  See McCulloch v. Commissioner, supra; Raines v. Commissioner, T.C. Memo. 1983-125.  In such case, only the portion which is reasonable is deductible under section 162.  See United States v. Haskel Engg. & Supply Co., 380 F.2d 786, 788-789 (9th Cir. 1967); Boser v. Commissioner, supra at 1133; McCulloch v. Commissioner, supra.  An expenditure may be ordinary and necessary, but at the same time it may be unreasonable in amount.  See United States v. Haskel Engg. & Supply Co., supra at 788; Stricker v. Commissioner, supra.

Respondent contends that because petitioner did not isolate the tuition cost for the courses, it is impossible to determine whether the cost petitioner incurred for the education itself is

reasonable.[4]  In the case at hand, isolation of the expense is not necessary to determine the reasonableness of the expense. Whether an expenditure is reasonable is a question of fact.  See Commissioner v. Heininger, 320 U.S. 467, 475 (1943); Boser v. Commissioner, supra at 1133; Voigt v. Commissioner, 74 T.C. 82, 89 (1980).  The focus of our inquiry is on "the primary purpose of the expenditure as it may be inferred from the totality of the facts concerning the benefits to be achieved, the direct relationship of those benefits to petitioner's business, and the reasonableness of the expenses."  Stricker v. Commissioner, supra (citing Love Box Co. v. Commissioner, T.C. Memo. 1985-13, affd. 842 F.2d 1213 (10th Cir. 1988)).

As discussed, the course improved petitioner's teaching skills.  Given the important purpose served by the skills petitioner developed and the benefit derived from her participation in the courses, the expenses associated with the courses appear to be reasonable.  See McCulloch v. Commissioner, supra.  None of the expenses incurred appear to be lavish, and the particular courses selected by petitioner served important educational purposes.  See id.

---

[4]  Petitioner paid $4,140 for the Legendary Greece course and $4,500 for the Southeast Asia course.  These amounts include course tuition, lodging, and meals.  Petitioner contends that respondent assured her that no breakdown of expenses was necessary.  Petitioner, therefore, objects to respondent's raising this issue in brief.

In order for petitioner to be able to deduct the travel expenses associated with the U.C. Extension courses, she also must establish that her travel was undertaken <u>primarily</u> to obtain education which maintains and improves the skills required in her employment.  See sec. 1.162-5(e), Income Tax Regs.  If a taxpayer travels to a destination and engages in both business and personal activities while at that destination, the expenses attributable to the personal activity constitute nondeductible personal or living expenses.  See <u>id.</u>

Whether a trip is related primarily to the taxpayer's trade or business or is primarily personal in nature depends on the facts and circumstances of each case.  See <u>McCulloch v. Commissioner</u>, <u>supra</u>; sec. 1.162-5(e), Income Tax Regs.  The amount of time during the trip which is spent on activities directly relating to the taxpayer's trade or business relative to the amount of time devoted to personal activity is an important factor in determining the trip's primary purpose.  See <u>McCulloch v. Commissioner</u>, <u>supra</u>; sec. 1.162-5(e), Income Tax Regs.

Petitioner's travel to Greece and Southeast Asia undoubtedly involved significant elements of personal pleasure; however, we are satisfied that petitioner's primary purpose in undertaking the travel was to maintain and improve her skills as an English teacher.

In petitioner's case, the U.C. Extension courses involved significant travel and tours. Although a number of the sites petitioner visited while she participated in the courses were places many tourists would visit while sightseeing in the respective countries, each site visit served an educational purpose as part of an organized course of study.

While traveling in Greece and in Southeast Asia, petitioner spent the majority of her time involved in course activity. The record indicates she was primarily engaged in course activity on all but one of the 18 days that the Legendary Greece course was in session. During these 17 days, a course itinerary indicates petitioner spent a minimum of 5 hours a day engaged in course activity. Although a detailed itinerary with the time allocated to specific activities is not available for the Southeast Asia course, petitioner testified that during the Southeast Asia course most of her time during the day was spent either en route to sites, observing sites, or hearing lectures at the sites. She further testified that she had minimal free time during the course which might consist of up to 3 hours on some days.

Given the nature of the educational programs petitioner pursued, it is impossible to separate definitively the personal aspects of petitioner's travel during the time she participated in the U.C. Extension courses from the business aspects. The fact that she undoubtedly derived personal benefit from her

travels does not subvert their business purpose.  On the basis of the record, we find that petitioner spent most of her time in Greece and in Southeast Asia participating in the U.C. Extension courses.[5]

Petitioner, however, has not established that the $240 expense she incurred for hotel accommodations before the Legendary Greece course began is attributable to business activity.  Petitioner testified that she arrived 2 days early in Greece so that she would have an opportunity to recover from jet lag before the course began.  We find this expense to be attributable to personal activity.

We thus hold that petitioner's education and travel expenses, with the exception of the $240, are ordinary and necessary business expenses within the meaning of section 162.

In addition to being subject to the requirements of section 162 and the provisions under section 274 already discussed, a taxpayer's deductions for certain travel expenditures are subject to other provisions of section 274.  Respondent, however, has not challenged petitioner's travel expenses under the substantiation requirements of section 274(d) or under the limitation on meal

---

[5]  Although respondent does not contend that petitioner's travel expenses are subject to the provisions of sec. 274(c), the regulations issued under this section tend to support our determination that petitioner was primarily engaged in business activity during the time she spent in Greece and in Southeast Asia.  See sec. 1.274-4(d)(2), Income Tax Regs.

and entertainment expenses under section 274(n).  We consequently do not address the extent to which these provisions may limit petitioner's deductions.

Accordingly, we find petitioner is entitled to deduct all but $240 of her education and travel expenses.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.